# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SYLVESTER TRAYLOR** | **CIVIL No.** |
| **PLAINTIFF** | |
| **v.** | |
| **UYLSSES B. HAMMOND, LAURA NEWMAN, JEREMY NAKAMARA, STEWARD SMITH, DENISE PELLITIER, CONNECTICUT COLLEGE, TANYA A. BOVE, JACKSON LEWIS LLP, CITY OF NEW LONDON, SGT. LAWRENCE M. KEATING** | |
| **DEFENDANTS.** | **NOVEMBER 15, 2012** |

## PETITION AND NOTICE FOR REMOVAL TO FEDERAL COURT

Pursuant to 28 U.S.C. §§ 1331 and 1141, the undersigned  Defendants, the City of New London and Sgt. Lawrence M. Keating (the "removing Defendants") by and through their attorneys, Ryan Ryan Deluca, LLP, respectfully give notice of the removal of this action from the Superior Court of the State of Connecticut, Judicial District of New London, to the United Stated District Court for the District of Connecticut.  The Defendants submit that the United States District Court for the District of Connecticut, has federal question jurisdiction over this civil action pursuant to and this matter may be removed to the District Court in accordance with the procedures provided at 28 U.S.C. section 1446.  In further support of this Notice of Removal, the Defendants state as follows:

1.      Plaintiff, Sylvester Traylor ("Plaintiff") filed a Complaint in the Superior Court for

the State of Connecticut, judicial district of New London, on October 19, 2012.  A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit "A."

2.      The Defendant the City of New London and Sgt. Keating were served with a copy of the Complaint on October 16, 2012.  The other defendants, Denise Pelletier, Connecticut College, Ulysses B. Hammond, Steward Smith, Laura Newman, Jeffrey Nakamara, Tanya Bovee and Jackson Lewis were purportedly served on October 17, 2012.  A true and correct copy of the Return of Service is attached hereto as Exhibit B.

3.      Count Eight of the plaintiff's action purports to state claims against the removing Defendants based on violations of, inter alia, the Fourteenth Amendment of the United States Constitution.  Count Eight also incorporates alleged violations of 42 U.S.C. §§ 1983 and 1985 and 18 U.S.C. § 241.

4.      28 U.S.C. § 1331 provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5.      28 U.S.C. § 1441(b) provides in relevant part that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or law of the United States shall be removable without regard to the citizenship or residence of the parties."

6.      The removing Defendants submit that this matter should be removed to the United States District Court for Connecticut pursuant to 28 U.S.C. §§ 1331 and 1441, which permits removal of any civil action to the District Courts that have original jurisdiction.

7.      Written notice of this filing of this Petition and Notice of Removal will be served on all parties pursuant to 28 U.S.C. § 1446(d) and a true and correct copy of this Notice will be filed with the Clerk in the Superior Court for the judicial district of New London.

WHEREFORE, the removing Defendants, the City of New London and Sgt. Keating hereby remove this civil action to the United States District Court for Connecticut pursuant to 28 U.S.C. § 1441.

THE DEFENDANTS,
CITY OF NEW LONDON and
SGT. LAWRENCE M. KEATING


By:___/s/_____
Maciej A. Piatkowski, Esq., (CT 21555)
Ryan Ryan Deluca, LLP
707 Summer Street
Stamford, CT   06901
Facsimile:  203-357-7915
Phone No. 203-357-9200

EXHIBIT A

## SUPERIOR COURT
## STATE OF CONNECTICUT

**SYLVESTER TRAYLOR**
       **Plaintiff**

   vs.                                                        CIVIL ACTION No:

**Ulysses B. Hammond ET. AL.,**
**Laura Newman**
**Jeremy Nakamara**
**Steward Smith**
**Denise Pelletier**
**Connecticut College**
**Tanya A. Bovée**
**Jackson Lewis LLP**
**City of New London**
**Sgt. Lawrence M. Keating**
       **Defendants**

                          **JURY TRIAL REQUESTED**
                          DATE: September 6, 2012

## COMPLAINT

**COUNT ONE (DEFAMATION OF CHARACTER, as to all parties)**

1. This is a Defamation of Character Complaint pursuant to the Connecticut Constitution Art. 1 Sec.10. ***"All Courts shall be open, and every person, for an injury done to him in his person, property or <u>reputation</u>, shall have remedy by due cause of law."***

2. This action does hereby redress the deprivation of rights secured to the Plaintiff by the Connecticut Constitution, the United States Constitution, the laws of the State of Connecticut and the United States.

3. Frist and foremost, it is a well-known fact that the State of Connecticut General Statute 53a-186 concerning public indecency should not be applied indiscriminately, as applied by the above Defendants. Furthermore, Connecticut College is an open campus, an important part of the local community because many groups and individuals enjoy its public access for special events.

1

4. The Plaintiff alleges that he is the victim of a cover-up to a public indecent incident. The incident occurred on April 14, 2011. The above Defendants have not only acted contrary to Connecticut State law, but that they targeted the Plaintiff, an African-America, under the color of law, as a whistleblower and/or as a scapegoat to cover-up their own unlawful actions in a public access building.

5. The Plaintiff alleges that the above Defendants have created unofficial policy contrary to CGS. 53a-186 (public indecency) which is continuing because the Defendants are refusing to post any warning signs in a public access building indicating that on the third level of the Cummings Art Building that there is nude sketching.

## PARTIES

6. At all relevant times mentioned herein, the Plaintiff is SYLVESTER TRAYLOR, an African-American, who is a member of a protected class, and who resides at 881 Vauxhall St. Ext. Quaker Hill, CT 06375.

7. At all relevant times mentioned herein, Mr. Traylor does hereby sue the above Defendants in his individual capacity and as a member of the General Public because of the public nuisance and negligent condition which the above Defendants have created that interfered with Mr. Taylor's common law rights granted to the General Public.

7.1 Mr. Traylor learned about these public access events held on Connecticut College campus through advertisements in The Day, a local newspaper as well as Connecticut College's own web site.

7.2 For example: April 14th –April 16th 2011 Connecticut College held the Senior Dance Department's Senior Thesis Concert, "IMPRINT". See College's link: http://www.conncoll.edu/community/events-on-campus.htm.

7.3    The third level of the Cummings Art Building is advertised as open to the General Public as per their announcement on Connecticut College's own website. The hours that it is open to the General Public are from 8:00A.M. to 5:00 P.M. including Saturdays and during studio classes. See College's link: http://www.conncoll.edu/artsculture/cummings-art-galleries.htm

8. At all relevant times mentioned herein, Mr. Traylor was lawfully directed to the third level of the Cummings Art Building, by a faculty member of the Art Department at Connecticut College. Mr. Traylor could not avoid the unlawful indecent exposure of the Defendant, Laura Newman because the door was wide open.

9. Mr. Traylor is a member of the General Public, entered one of the Defendant's, Connecticut College, public access buildings. The above Defendants assumed the risk and liability by subjecting Mr. Traylor to the indecent exposure of the Defendant, Laura Newman. Mr. Traylor could not have discerned with reasonable diligence and did not have knowledge of the Defendant's Laura Newman's indecent exposure while he was approaching an open doorway, and from which at that same time there were two young children exiting from the same open doorway.

10. Due to the Defendant's actions, Mr. Traylor, in his individual capacity and as a member of the General Public has suffered from their defamatory remarks, racial discrimination and negligent misrepresentation.

11. At all relevant times mentioned herein, the above Defendants are hereby sued in their official and personal capacity.

12. The Defendants are Ulysses B. Hammond, Laura Newman, Jeremy Nakamara, Steward Smith, Denise Pelletier, and Connecticut College whose business

3

address is located at 270 Mohegan Avenue, New London, CT 06320.

13. At all relevant times mentioned herein, the Defendant, CONNECTICUT COLLEGE, was a duly authorized corporation under the laws of the State of Connecticut operating under interstate commerce, advertising public events for entertainment for a profit, and while conducting business as a professional educational corporation. CONNECTICUT COLLEGE is operating with a license to do business with the General Public by advertising for their concerts and art exhibits to the General Public.

14. CONNECTICUT COLLEGE, business identification number recorded with the Commercial Recording Division of the Secretary of the State of Connecticut is: #0269319. The business type is listed as: Non-Stock.

15. CONNECTICUT COLLEGE is located within the State of Connecticut at 270 Mohegan Avenue, New London, CT 06320.

16. At all relevant times mentioned herein, on April 14, 2011, the Defendant, CONNECTICUT COLLEGE, was acting within its scope as offering public events in the Cummings Art Building and/or the Palmer Auditorium for entertainment for a profit. CONNECTICUT COLLEGE, has in fact admitted to their negligent actions in a police report that they did in fact leave a door wide open exposing the Defendant, Laura Newman, nude body to the General Public while at the same time advertising in the New London Day Newspaper and through their own website that the third level of the Cummings Art Building was open to the General Public.

17. Pursuant to State Law, Connecticut College is required to maintain general, professional, corporate liability insurance coverage, and can be held liable, as the landlord to the Cummings Art Building where they provide public entertainment and art exhibits.

18. Pursuant to Connecticut Unfair Trade Practices Act (CUTPA) Secs. 42-110a — 42-110q cited. Id., 569. Connecticut Unfair Trade Practices Act (CUTPA) cited. 45 Conn. Sup 11. It is hereby submitted that Connecticut College the property owner has violated CUTPA by failing to remedy a defective premise where its students have admitted to leaving a door wide open, exposing the General Public to nudity.

19. The Defendant, Connecticut College was aware of Mr. Traylor's questioning their liability for an injury due to a defective premise, and his request to make corrective actions prior to filing this complaint.

20. At all times mentioned herein, the above Defendants, Ulysses B. Hammond, Laura Newman, Jeremy Nakamara, Steward Smith, Denise Pelletier, Tanya A. Bovée, Attorney at Law, Jackson Lewis LLP, City of New London, and it's Police Officer, by the name of Sgt. Lawrence M. Keating, a former security officer of the Defendant, Connecticut College, held themself as duly qualified employees, agents, and/or students of CONNECTICUT COLLEGE.

21. The above Defendants are required to uphold the laws of the State of Connecticut when they are providing venues for concerts and art exhibits open to the General Public.

22. The attorney for service for the above Defendants Ulysses B. Hammond, Laura Newman, Jeremy Nakamara, Steward Smith, and Denise Pelletier is Tanya A. Bovée, Attorney at Law, and Jackson Lewis LLP located at 90 State House Square, 8th Floor Hartford, CT 06103.

23. At all times mentioned herein, the above Defendants Tanya A. Bovée, Attorney at Law, and Jackson Lewis LLP., is located at 90 State House Square, 8th Floor Hartford, CT 06103.

24. Pursuant to C.G.S. Sec. 41-110g(c) a copy of this complaint has been mailed to the Attorney General and the commissioner of Consumer Protection.

25. At all times mentioned herein, the above Defendants, The City of New London and its Police Officer, Sgt. Lawrence M. Keating, who is hereby sued in his personal and official capacity, is located at 181 State St. New London, CT. 06320. Connecticut College makes payments in lieu of taxes to the City of New London, for police, fire, and public utility services which makes them an agent/or servant of Connecticut College.

26. Mr. Traylor believes that the above Defendants and its agents discriminated against him and defamed his character due to his race and color, Black, when he was subjected to harassment, racial profiling, denial of public accommodation, unequal treatment and denied further access to the Cummings Art Building which is open to the General Public.

27. The above Defendants were acting within the scope of their employment and/or as a student with the knowledge, permission and authority of Connecticut College while conducting an unofficial policy which is contrary to State law concerning public indecency. See CGS 53a-186 (public indecency).

28. It is hereby submitted that the above Defendants committed the act of defamation and racial discrimination, jointly, and in concert with each other. Each Defendant had the duty and the opportunity to protect Mr. Traylor from the unlawful action of the other Defendants, but each Defendant failed and refused to perform such duty, thereby proximately causing Mr. Traylor injury.

29. Each of the Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful action of defaming his name, and by allowing Mr. Traylor to be discriminated against under the color of law.

30. Mr. Traylor has been harmed due to the egregious actions of the Defendants, and prays for judgment against Defendants as hereinafter set forth.

31. Mr. Traylor is hereby attaching his Right-to-Sue from the Connecticut Commission on Human Rights and Opportunities to file suit against the above Defendants, hereto marked **Exhibit "A".**

## JURISDICTION

32. Jurisdiction of the State of Connecticut Superior Court is invoked pursuant to: Connecticut Constitution Art. 1 Sec. 10. ***"All Courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due cause of law."***

33. At all relevant times mentioned herein, the above Defendants are hereby sued in their official and personal capacity for the defamation of Mr. Traylor's character. The above Defendants have acted willfully and maliciously in and attempt to cover up their actions which are contrary to CGS. 53a-186 (public indecency). Whereas, in this complaint the Defendants actions cause a public concern, and the issues presented in this complaint raise constitutional questions that require this courts' *de novo* review. This court has jurisdiction pursuant to *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) which is a landmark case in United States law and in the history of law worldwide. This case formed the basis for the exercise of judicial review in the United States under Article III of the Constitution. It was also the first time in Western history a court invalidated a law by declaring it "unconstitutional".

33.1  **IN THAT** there is public indecency in a public access building where underage children have access.

33.2 **INTHAT** Mr. Traylor raises constitutional questions that State laws were misapplied to him by The City of New London and its Police Officer, Sgt. Lawrence M. Keating, with the intent to retaliate against him under the color of law for bringing a pervious complaint against the City of New London. It is hereby alleged that The City of New London and its Police Officer, Sgt. Lawrence M. Keating, actions have violated Mr. Traylor's due process and equal protection rights. Also see Title 42 U.S.C. Sec. 1985: *Section 1 of the act (now codified at 42 U.S.C. § 1983, and called in this entry "section 1983"), provided that any person deprived of rights conferred by the Constitution by someone acting **under color of law** (i.e., a **state or local official acting with legally granted authority, or, through purporting to act within such limits, an official may be misusing authority**) or custom could bring suit in federal court and recover damages or equitable relief. Section 2 (now codified at 42 U.S.C. § 1985, and called in this entry "section 1985") of the act provided criminal sanctions and a civil damages action for* <u>conspiracy</u> *to commit a range of offenses. These offenses included ........., **intimidating witnesses or parties to legal action,** using threat or force to influence jurors, or going on the highway in disguise to deprive others of the exercise of constitutional rights guaranteed by the Fourteenth and Fifteenth Amendments.*

33.3 The cause of this complaint arose out of the fact that the Defendants, The City of New London and its Police Officer, Sgt. Lawrence M. Keating deprived Mr. Traylor of his equal protection and due process rights secured by the Constitution and laws of the United States as well as laws of the State of Connecticut and its' Constitution.

34. These acts by the above Defendants are a direct and proximate cause to aggrievement of Mr. Traylor and violated Mr. Traylor's rights under the

Connecticut Constitution; Article 1.

35. Jurisdiction of this Court is invoked in compliance with the Connecticut Constitution Art. 1 Sec. 1, 10, 20.

   35.1  Article 1, § 1 of the Connecticut Constitution: **"All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."**

   35.2  Connecticut Constitution Art. 1 Sec. 20: **"No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."**

36. Connecticut Unfair Trade Practice Act (CUTPA), Connecticut General Statute Sec. 51-346, Sec. 51-349, Sec. 51-350 and Sec. 51-347c, Connecticut General Statutes § 52-584, and General Statutes §42-110a.

37. Venue lies within the Connecticut Superior Court jurisdiction taking into consideration that the Defendants have continued to defame Mr. Traylor's name as of this day, September 6, 2012 because of the defamatory remarks which arose out of an incident that took place on the Connecticut College campus and said campus which is within New London County. The Plaintiff has suffered from emotional distress because of the Defendants actions.

38. It is Mr. Traylor's contention that the Defendants have also violated the Conn. Gen. Stats. §46a-64(a)(1) CGS 54-11 and 54-1m(Alvin Penn Racial Profiling Act), full and equal benefit of all laws as enforced under 46a-58(a) of the Conn. General Statutes.

## DEFAMATORY REMARKS

39. This is a defamation of character action, to hold the above Defendants accountable for their false statements about Mr. Traylor's character. Mr. Traylor has requested the above Defendants to retract the statements that they have made public, but they have refused to do so.

40. Due to the above Defendants' failure and/or refusal to correct or otherwise modify their defamatory remarks in good faith manner, Mr. Traylor is hereby mandated to back up his complaint with evidence of the following false and defamatory statements:

40.1   **IN THAT,** on April 14, 2011, the above Defendants falsely stated that Mr. Traylor willfully and intentionally went to the third level of the Cummings Art Building knowing that he was not welcome.

40.2   **IN THAT,** on April 14, 2011, the above Defendants falsely stated that Mr. Traylor had hidden motives and/or that he was lying about his reason for going to the third level of the Cummings Art Building after he had clearly stated that a faculty member, by the name of Denise Pelletier, had directed him to the third level to seek out a court room sketch artist.

40.3   **IN THAT,** on April 14, 2011, the above Defendants falsely accused Mr. Traylor of Trespassing in a building that is advertised by Connecticut College's own website to be open to the General Public.

40.4   **IN THAT,** the attorney for the Defendants, Tanya A. Bovée of Jackson & Lewis continues to create a misrepresentation of Mr. Traylor's character by causing her own law office staff members to fear Mr. Traylor under false pretenses.

40.5   **IN THAT,** on April 14, 2011, Mr. Traylor in good faith had made a complaint before the Connecticut Human Rights and Opportunity Commission, (CHRO) in an effort to correct the above Defendant's defamatory remarks; however, the above Defendants have refused to make any corrective actions.

41. Mr. Traylor's character has been defamed solely on the basis that he a Black man who inadvertently glimpsed the nudity of a white woman, Laura Newman, in a public access building, and as a result....the Black man was unfairly mistreated after he attempted to notify Laura Newman that the wide open doorway provided a direct view of her nudity to the General Public;

   a) **IN THAT** the above Defendants defamed Mr. Traylor's character by stating that he was lying about his reasons for the inquiring of a courtroom sketch artist;

   b) **IN THAT** the above Defendants defamed Mr. Traylor's character by stating that he was lying about the fact that <u>a professor</u> had told him to <u>go to the third level</u> to seek out a court room sketch artist;

42. It is Mr. Traylor's contention that the above Defendants have violated his due process and equal protection rights, under the color of law, and under the Connecticut Constitution Article First Sec. 1, 10, and 20, on its face, by attempting to cover-up an unofficial policy concerning nudity in a public access building. Also see, Article First Sec. 1: "All Courts shall be open, and every person, for an injury done to him in his person, property or <u>reputation</u>, shall have remedy by due cause of law".

43. It is hereby submitted that ***"all"*** of the above Defendants committed public humiliation and embarrassment to Mr. Traylor, in an effort to discredit him because of their own inferiority complex concerning Mr. Traylor's race and

color. The Defendants inferiority complex was in fact created out of their own defective policies regarding nudity in a public access building. Mr. Traylor became ill due to the stress as a result of the above Defendants actions.

44. The false statements by the above Defendants were in fact intentional, reckless, and/or malicious with the intent to defame and discredit Mr. Traylor.

45. Mr. Traylor is a law-abiding citizen of the United States of America, with an Honorable Discharge from the United States Army. Mr. Traylor has never been tried and found guilty of any crime. Neither has Mr. Traylor ever been found guilty before a court of law associated with the defamatory remarks made by the above Defendants.

46. Mr. Traylor has a reputation as a Civil Rights Advocate, and he is well-known in his community for his efforts in fighting for equality and justice for the victims of medical malpractice. Mr. Traylor, as a life member of the NAACP, and he seeks justice and equitable treatment for himself and others, regardless of whether a person is rich or poor, black or white, brown or yellow, juror or witness, perpetrator or victim, cop or judge, Wall Street banker or welfare recipient.

47. The above Defendants, Ulysses B. Hammond, Steward Smith, Connecticut College Security Department, the City of New London, and its Police officer, Sgt. Keating, had full knowledge of Mr. Traylor prior to April 14, 2011 because they were aware of Mr. Traylor through the New London Day's Newspaper article titled *Invisible No More* dated March 14, 2011. See enclosed the police report with the Day newspaper photo of Mr. Traylor instead of his driver's license photo.

48. Mr. Traylor's name has been defamed due to the above Defendants making statements to third parties to cause a false alarm that they should fear him.

49. The acts of the above Defendants constituted intentional, reckless and/or negligent actions by causing Mr. Traylor to litigate before both a criminal and civil court to clear his name, and to affirm his true intent of entering the Cummings Art Building to obtain the services of an artist for court room sketches on April 14, 2011. The defamatory actions of the above Defendants constitute a direct violation of Mr. Traylor's due process rights as well as defaming Mr. Traylor's character.

49.1 Mr. Traylor, an African-American, unwittingly glimpsed a nude White-woman in an Art studio after he was directed to the third level of the Cummings Art Building by the Defendant, Denise Pelletier to inquire for a courtroom sketch artist.

49.2 Mr. Traylor raises the question that the above Defendants are practicing animus based discrimination through the defamation of his name, by creating a double standard of who can view exposed nudity on the third level of the Cummings Art Building.

## DEMAND FOR JURY TRIAL

50. Mr. Traylor demands a trial by a jury on all the issues so triable, Connecticut Constitution, Article I, Section 21: "The right of trial by jury shall remain inviolate." Kindly find enclosed, Mr. Traylor's Claim for a Jury.

51. The Seventh Amendment of the United States Constitution provides in pertinent part that: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved..." This language does not include a single reference to "manipulation" of a jury by the Court in a conspiracy with lawyers to design a verdict suitable to the Court through the use of lawyer rules, judicial rules, court rules, or otherwise trumped-up "legal technicalities" and instructions which effectively "handcuff" the jury. All of these

activities are no more or less than a denial of the right to a jury of peers with the constitutional authority to judge both the facts and law in a case.

## FACTUAL BACKGROUND

52. On April 14, 2011, between the hours of 4:00-5:00 p.m., Mr. Traylor went to Connecticut College, the Defendant's campus, with the intention of locating an artist who he wished to commission to make artistic renderings of his appearances before New London Superior Court, Judge Thomas F. Parker in December 21, 2009, January 20, 2011 and February 3, 2011. See attached the art work requested by Mr. Traylor marked hereto **Exhibits #1, #2, and #3.**

53. Mr. Traylor had appeared before Judge Parker on numerous occasions since December 2009 in an ongoing wrongful death lawsuit and spoliation of evidence against Dr. Bassam Awwa.

54. The purpose of Mr. Traylor's visit to the Defendant's campus was to seek an artist to render courtroom sketches to be used as exhibits or evidence to accompany his claims against Judge Parker's intimidation, harassment and judicial abuse of him during those hearings.

55. Mr. Traylor previously filed CHRO Complaints (#1040334, #1040338) against the Defendant, City of New London, (New London Police Department), and the Connecticut Judicial Branch Office, Chief Court Administrator and Judge Parker which is still pending before the United States District Court, District of Connecticut (Docket No. #3:11CV132 (AWT).

56. On April 14, 2011, Mr. Traylor had gone to Connecticut College to inquire for a faculty member to do some art work. Mr. Traylor spoke to three (3) faculty members on the second (2) level. One of the faculty members by the name of Denise Pelletier told Mr. Traylor that someone, maybe on the third (3rd.) level, might be able to do the art work. At no time did anyone ask Mr. Traylor to leave

the building. Mr. Traylor then proceeded to the third (3rd.) level where he heard loud music. Mr. Traylor saw two young children running from a doorway as he was approaching. From a wide open doorway, Mr. Traylor could see from the hallway a nude woman, Laura Newman. Mr. Traylor went directly to the artist, Jeremy Nakamara to inquire about doing some court room sketches. Mr. Traylor gave the artist his correct telephone number (860) 331-4436 for a possible art job, to draw the attached Exhibits #1, #2, and #3. Once again, at no time did anyone ask Mr. Traylor to leave the building, nor did the nude model request Mr. Traylor to leave the building.

56.1   The Cummings Fine Arts building is open to the General Public and announcements of public events to be held at this building are also posted in the New London Day Newspaper and on the internet. As stated in their web page: *"New London offers vibrant and diverse attractions including an expanding downtown scene with a variety of galleries and museums, restaurants and bars, eclectic shops, and historic buildings. The College is an active participant in the New London community and* <u>*opens its campus to the public."*</u>

56.2   See links <u>http://www.conncoll.edu/community/events-on-campus.htm.</u> As an active participant in the New London Community, Connecticut College has a duty to protect the citizens, both adults and minors, of said community from unintentional indecent exposure by nude models utilizing the Cummings Art Building.

57. On April 14, 2011, Mr. Traylor, had returned to his vehicle and proceeded to exit the campus. In passing a Connecticut College security officer on foot, Mr. Traylor noticed that the Security Officer was walking along the sidewalk....talking on what looked like a cell phone or radio.

58. Mr. Traylor was about to pass the <u>unattended</u> security check point as described in **Exhibit "B",** when he decided to turn around, and go back, and he approached the campus security officer in his car. Mr. Traylor inquired whether the security officer was looking for him because of his continual stare in Mr. Traylor's direction.

59. The officer asked Mr. Traylor if he had recently been on the third (3rd.) floor of the Cummings Art building and Mr. Traylor confirmed that he had, and that he had asked an artist to do some court room sketches. Mr. Traylor further stated that he had given the artist his correct name and telephone number.

60. At that point, another campus security officer had arrived and Mr. Traylor suggested to the first officer that he could go and check out his statement with the artist.....since his partner had arrived and that Mr. Traylor was going to wait. The campus officer concurred with Mr. Traylor's suggestion and departed towards the Cummings Art Building.

61. At that point, the Defendant, Sgt. Keating, who is employed by the City of New London as a Police Officer, and who was also a former security officer of the Defendant, Connecticut College, arrived on the scene. This was within <u>one or two minutes</u> after Mr. Traylor had talked to the campus security.

62. Mr. Traylor was never aggressive to Officer Keating nor was Mr. Traylor aggressive to the campus security officers. Mr. Traylor was composed and posed no threat to anyone at any time.

63. As Mr. Traylor started to step out of his car....and even had time to lock his car with a key..... Mr. Traylor started to walk toward the Police car which was facing in the opposite direction of his car, the Police officers started to yell at Mr. Traylor to "Get back in your car!!!" Mr. Traylor then proceeded to turn around and walk back towards his car, reached into his pocket to get his keys, and suddenly.... Mr. Traylor realized that the officer had rushed up on him from the

back side in a violent manner, and began to frisk him in the most demoralizing and violent manner. The officer had his hands on Mr. Traylor's private parts (front and rear) asking for him by his first name, "SYLVESTER, do you have any weapons?" Mr. Traylor replied, "NO!!!" Mr. Traylor stated that he was there on campus only inquiring to hire a faculty member to do some art work. The Officer then kept on asking Mr. Traylor what he was doing there. The officer then looked inside Mr. Traylor's car and saw a Coast Guard Academy bag, with the Coast Guard Academy emblem. The Police officer continued to question Mr. Traylor by his first name, "SYLVESTER....what are you doing with a Coast Guard Academy bag?" Mr. Traylor then started to question the officer....*"Do you know me?" Do I know your family? Why are you continuing to call me by my first name? And regarding the Coast Guard Academy bag, can you not see that which is clearly written on my hat......that I am wearing that reads VETERAN in large white letters?"*

64. At no time did Sgt. Keating check Mr. Traylor's identification, yet he already knew Mr. Traylor's first name.

65. Officer Keating then handcuffed Mr. Traylor, even after the fact that he had searched him and found no weapons within his possession. Officer Keating made Mr. Traylor sit on the curb behind his car while still wearing his VETERAN'S hat and where people from the public witnessed this wrongful arrest which caused Mr. Traylor public humiliation and defamed his character. This detainment of Mr. Traylor was based on animus discrimination and initiated by the Defendants on The Connecticut College property where Mr. Traylor was detained in full view of the General Public as they processed into the Art building for a concert and to see art exhibits with their children.

66. Mr. Traylor was well dressed, in a sports jacket, dress shirt, slacks, and dress shoes. It is Mr. Traylor belief that the officers were clearly racially profiling him, with the intent to humiliate, harass, and even mock Mr. Traylor because of his

race and color.

67. It is a fact that Sgt. Keating of the New London Police violated Mr. Traylor's "Miranda Rights" through interrogating him while in handcuffs and by not informing Mr. Traylor of his constitutional rights.

68. **Furthermore,** on April 14, 2011, the above Defendants are responsible for causing Sgt. Keating of the New London Police to violate Mr. Traylor's "Miranda Rights" through handcuffing him and detaining him "after" a demoralizing and violent search of his private parts, front and rear, which constitutes a violation of THE ALVIN W. PENN RACIAL PROFILING ACT, C.G.S. 54-1l and 54-1m. Needless to say, this was done without probable cause because Mr. Traylor has not been found guilty of any violation of the law and Mr. Traylor was wrongfully arrested while being subjected to public humiliation while being in handcuffs.

69. The restraining officer neglected to ask for Mr. Traylor's driver's license as proof of identification but called Mr. Traylor by his first name, SYLVESTER. Mr. Traylor's driver's license number is missing from the ticket issued by the police. See **Exhibit "C".** It is also Mr. Traylor's contention that Sgt. Keating's actions were in fact retaliatory because of a previous CHRO complaint against the New London Police which is presently before the United States District Court, docket number: #3:11-CV-132 (AWT). Interestingly, the police report also contained a photo of Mr. Traylor from The New London Day March, 14th. 2011 newspaper article which featured Mr. Traylor's intention to change the State Law regarding the Certificate of Merit and medical malpractice. The question is, why would the Police Department have a newspaper photo of Mr. Traylor on record, or search for such a photo to include in their report, instead of Mr. Traylor's driver's license photo? See **Exhibit "D".**

70. The officer continued to ask Mr. Traylor what was his purpose for being on campus and Mr. Traylor reiterated what he had previously told the campus security police.

71. A short time later, Sgt. Keating returned with the campus security officer, confirming Mr. Traylor's representations. Unable to establish any basis of criminal misconduct, Sgt. Keating then began to question Mr. Traylor if he had looked back at the nude model, Laura Newman while he was exiting a door that was wide open to a hall way. Refer back to **Exhibit "B"** photos of the wide open door which clearly depict the fact that anyone walking by could have viewed Laura Newman in the nude. The photos leading to the third (3rd.) level clearly depicts that there was no signs restricting any person from entering the third (3rd.) level.

71.1    It is Mr. Traylor's contention that the above Defendants ignored and/or disregarded his true intentions of being present in the Cummings building. Mr. Traylor claims that Laura Newman and Jeremy Nakamara did not believe Mr. Traylor's true intention because of his race and color. The Defendants have attempted to defame Mr. Traylor's character through institutionalized racism by causing third parties to fear and/or question if Mr. Traylor had alternative motives for being on the third floor.

71.2    **IN THAT** the above Defendants defamed Mr. Traylor's character by stating that he was lying about his reasons for the inquiring of a courtroom sketch artist.

71.3    **IN THAT** the above Defendants defamed Mr. Traylor's character by stating that he was lying about the fact that a professor had told him to go to the third level to seek out a court room sketch artist.

71.4    Additionally, the New London Police were influenced by Laura Newman, Jeremy Nakamara and Connecticut College Security with the intent to

defame Mr. Traylor's character through discrediting him because of his race and color, and to lessen their liability.

71.5 The fact is that Laura Newman and Jeremy Nakamara clearly describe Mr. Traylor as a Black male, of whom they did not believe his true intention, and which constitutes animus based discrimination. Their attitude was in fact discriminatory against Mr. Traylor because of his race.

72. Mr. Traylor explained that the reason why he looked back was to see if the nude model was aware that the door was wide open and that the open door allowed the General Public to view her. It was Mr. Traylor's intent that she may cover up. At no time did she cover-up, nor did she ask Mr. Traylor to leave this room. As Mr. Traylor was leaving the wide open door while she was still fully nude, he stated in a very load voice: "I'm sorry for interrupting your session! Have a nice day."

73. Sgt. Keating directed the other New London police officer to issue Mr. Traylor a citation for trespassing. Refer back to **Exhibit "C"** to see the ticket....Mr. Traylor's driver's license number is missing...it is because the other officer didn't check for Mr. Traylor's identification as well.

74. Needless to say, Mr. Traylor, an African -American did not act *"Knowingly* and/or *Willfully"* breach an implied necessary element of the crime of Simple Trespass: Infraction, pursuant to Connecticut General Statutes Section 53a-110a. Mr. Traylor, plead not guilty for the following reasons:

- **IN THAT** at no time did Mr. Traylor **"KNOWINGLY"** know that he needed license to have the privilege of entering the Cummings Art Building which is open to the General Public.

- **IN THAT** there is no dispute that the Connecticut College Cummings Art building offers concerts and art exhibits to the General Public.

- **IN THAT** there is no dispute that there are no signs posted stating: No Trespassing and/or Private Property.

- **IN THAT** there is no dispute that Mr. Traylor had never been asked by Connecticut College not to return to their property either verbally and/or in writing prior to April 14, 2011.

75. Therefore, the State and the above Defendants cannot prove that Mr. Traylor **"KNEW"** that he was not welcome to make any inquiries from Connecticut College faculty members, who are located in a public accommodating building.

76. Mr. Traylor pointed out that the exhibit area was open and accessible to the General Public. There were neither signs warning against trespassing in this area nor were there any signs warning members of the General Public not to enter this area due to nudity or other restrictions.

77. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful defamatory remarks, but refused to do so.

78. Wherefore, Mr. Traylor has been harmed due to the egregious actions of the Defendants, and prays for judgment against Defendants as hereinafter set forth.

## COUNT TWO (PUBLIC NUISANCE TORT CLAIM as to the Defendant, Connecticut College)

1-79. Paragraphs 1 through 78, inclusive, of the First Count, are herein set forth as Paragraphs 1 through 79, respectively, of the Second Count.

79. At all relevant times mentioned herein, Sylvester Traylor, is a member of the General Public, and hereby sues the above Defendants in his capacity as a member of the General Public.

79.1 **IN THAT** Mr. Traylor, claims that the unofficial policy of Connecticut College which is contrary to the CGS. 53a-186 (public indecency) and is creating a continual public nuisance for under age children, and people from the General Public who encounter the public indecency in a public access building.

79.2 **IN THAT** Mr. Traylor, claims that the unofficial policy of Connecticut College is contrary to the CGS. 53a-186 (public indecency) and has not been corrected.

79.3 **IN THAT** Mr. Traylor, claims that the use of the Connecticut College premise is defective because their advertisement to the General Public is misleading that their facility is safe for all people of all ages and races.

79.4 **IN THAT** the above Defendants actions of creating a public nuisance has caused Mr. Traylor's injuries and damages through public humiliation, embarrassment, defamation to his name, and continues to inflict injury to anyone from the General Public who is exposed unexpected nudity. See 53a-186 (public indecency). The rights of hundreds and even thousands of people from the General Public who attend these concerts and Art Exhibits at the Cummings Art Building could possibly be violated if this court does not intervene and issue the Defendant, Connecticut College a declaratory order, declaring that Connecticut College should take corrective actions preventing indecent exposure.

79.5 Laura Newman was in fact a student of the Defendant, Connecticut College. It is hereby submitted that Connecticut College has caused a public nuisance by allowing children under the legal age, and the General

Public access to view nudity in a public access building. It is hereby alleged that, as a result of the negligent actions on behalf of the Connecticut College Campus Security, Steward Smith, the Vice President of Administration, Ulysses B. Hammond, as well as Laura Newman, Jeremy Nakamara, and Denise Pelletier, all of whom should have known that the structural layout of the Cummings building allowed for public viewing of nudity violated the CGS. 53a-186 (public indecency).

79.6    Additionally, on April 14, 2011, of the alleged negligent actions, when the above Defendants admitted that they left the door open, exposing nudity, there was a live concert, open to the General Public (commencing on April 14th. with events continuing through April 16th) of the Dance Department's Senior Thesis Concert, "IMPRINT". Needless to say, the Cummings Art building, as advertised on the internet, is clearly open to the General Public: See links http://www.conncoll.edu/community/events-on-campus.htm. **"New London offers vibrant and diverse attractions including an expanding downtown scene with a variety of galleries and museums, restaurants and bars, eclectic shops, and historic buildings. The College is an active participant in the New London community and opens its campus to the public."**

79.7    The Defendant, Connecticut College, has suddenly taken the grounds that Mr. Traylor should have known that he was not welcome on the third level of the Cummings Art Building. Despite the fact that Mr. Traylor was told by the Defendant, Denise Pelletier, to go up to the third level in order to make an inquiry for a courtroom sketch artist. Therefore, not only does the above listed website invite Mr. Traylor and the General Public to the third level, but the Defendant, Denise Pelletier also offered Mr. Traylor an invitation to inquire for a courtroom sketch artist on the third level.  There were no verbal warnings given to Mr. Traylor about the possibility of indecent exposure to nudity, and there were no signs that were posted

23

regarding closed sessions, restricted areas, student or faculty members only, nor were there any signs posted indicating that the General Public was not welcome to the third level of the Cummings Art Building.

80. One of the significant facts in this case is that Connecticut College campus security called the New London Police despite the fact that the General Public has access to their campus.

81. It is common knowledge and practice that the General Public has access to Connecticut College for numerous and diverse public entertainment and/or sporting events on its campus.

82. It is Mr. Traylor's contention that the Connecticut College is a business entity under Connecticut State law. Connecticut College has created a double standard in regard to public access.

83. The elements of the unofficial policy which is contrary to CGS. 53a-186 (public indecency), is that on April 14, 2011, the Defendant, Laura Newman did in fact violate CGS. 53a-186 (public indecency), when she clearly exposed herself to the General Public, unclothed, exposing her breast and vagina.

84. As a result of the above Defendant's negligence and/or carelessness, Mr. Traylor was required to spend various sums of money for expenses to clear his name.

85. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful violation Connecticut Constitution Art.1 Sec. 1, and 20, but refused to do so.

85.1 Article 1, § 1 of the Connecticut Constitution: **"All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the**

24

community."

85.2 Connecticut Constitution Art. 1 Sec. 20: **"No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."**

86. Wherefore, Mr. Traylor has been harmed due to the egregious actions that constituted a public nuisance by the Defendants. Mr. Traylor prays for judgment against Defendants as hereinafter set forth.

## COUNT THREE (DISCRIMINATORY PRACTICE as to all parties)

1-87. Paragraphs 1 through 86, inclusive of the First Count, are herein set forth as Paragraphs 1 through 87, respectively, of the Third Count.

87. It is Mr. Traylor's belief that the above Defendants have discriminated against him. Mr. Traylor clearly stated his intentions of finding an artist to render court room scenes and this was corroborated by the artist and nude model. Mr. Traylor's intentions were confirmed by the Defendant's statements to the police. However, due to prejudice by the Defendants towards Mr. Traylor's race, (Black) the Defendant's contacted Campus Security and implied that he was lying about his true intentions in seeking a court room sketch artist. Had Mr. Traylor been White, his intentions of finding a court room sketch artist would have been believed.

88. It is hereby further submitted that the above Defendants have created an institutionalized racism practice against Mr. Traylor through an ex-employee of Connecticut College, Sgt. Keating, a New London Police Officer who is a "White-American" and who intentionally deprived Mr. Traylor of his

constitutional rights.

89. The "Nude White-Woman, Laura Newman" together with the New London Police attitude towards Mr. Traylor was coupled by their own insecurity which was combined with a **racial inferiority complex**.

89.1 However, after the fact that,...Mr. Traylor had inadvertently discovered an unofficial policy of Connecticut College, it would appear that Mr. Traylor was being racially profiled by a "Nude White-Woman" who clearly did not have a license to display public nudity through a door that was wide open to public access and in a public accommodating building. It would appear the "Nude White-Woman" and the New London Police are saying: "We don't want that Black Man to view a "Nude White-Woman's body".

89.2 This is clearly an example, of how Emmett Till, a young African-American boy was murdered in Mississippi at the age of 14 after he had reportedly: "Flirted with a White Woman."

89.3 Also, this is an example of excluding African-Americans and Jews from certain properties during the 1970's in the State of Connecticut. For example, some golf courses would just have to say, *"What are you doing here?"* There was no written warning that Mr. Traylor should not be trespassing. Refer back to Exhibit B and kindly note that there were no signs posted for trespassing.

89.4 Mr. Traylor contends that overt discrimination was being displayed by the New London Police, campus security, and the artist, who clearly knew that Mr. Traylor had given his correct telephone number to the artist in good faith to get legitimate art work done.

89.5 Mr. Traylor contends that Sgt. Keating and campus security, demonstrated bias in their treatment, and instead rejected and ignored Mr.

Traylor's equal protection rights. Laura Newman, the "Nude White-Woman" was not questioned for her violation of CGS. 53a-186 (public indecency) in a public accommodating building.

89.6   It would appear that the above Defendants racially profiled and mocked Mr. Traylor, an African-American, by stating that he looked back and apologized to the "Nude White-Woman" as he was leaving the room through a door which was wide open and accessible to the General Public. Mr. Traylor simply stated to the Defendant, Laura Newman, as he was exiting an open doorway while she was still in the nude. Mr. Traylor stated, "*I am sorry for interrupting your session. Have a nice day.*"

89.7   Once again, this is clearly an example of the Social Racial laws that have since been dismantled in this country for over forty years because of innocent people like Emmett Till being murdered and/or African-Americans who were wrongfully arrested such as in the Susan Smith case, where a White lady who clearly displayed "racial hatred" by stating that a "Black Man" had car jacked her vehicle with her kids inside the vehicle. However, Susan Smith had in fact drowned her own children in a lake…in her own car.

89.8   Clearly, the above defendants are the equivalent of what one could call "Twenty First Century Lynch Men", with their intent to defame Mr. Traylor's name. It would appear that the above Defendants have completely ignored the fact that prior to Mr. Traylor going to the third floor, he had spoken to three faculty members and he had made the same inquiry for a courtroom sketch artist.

90. On April 14, 2011, the Defendants, Laura Newman and Jeremy Nakamara, clearly stated Mr. Traylor's intention, but they didn't believe him. It is Mr. Traylor's contention that they didn't believe him because of animus based discrimination. *"The Male Student stated the accused told him he was*

*looking for a sketch artist. When he asked why, the male student also felt as though the accused was lying and making up an excuse, for the same reasons as the female student. The accused told the male student that he was involved in a law suit and needed a sketch artist to draw the court room and the judge."* See the end of page 2 and the beginning of page 3 of the Police report.

91. Additionally, Sgt. Keating, an ex-employee of the Defendant, Connecticut College, also questioned Mr. Traylor an African-American if he had just viewed the nude body of the Defendant, Laura Newman, a White-American, which is in fact, the totality of this case, and constitutes the animus based discrimination. Their attitude was in fact discriminatory against Mr. Traylor because of his race.

92. HOWEVER, THERE IS NO DISPUTE as to the fact that Mr. Traylor never made any derogatory comments to the "Nude-Defendant", Laura Newman, a "White-American" as he was leaving the room. The Defendant, Laura Newman, could clearly see that the door was "STILL" wide open. The Police report stated: *"Upon walking out of the room the accused turned and looked at her again, "STILL" in the nude, and told her to have a good day."* See fourth paragraph on page 2 of the Police Report. The question is [If] the Defendant, Laura Newman while in the nude, could see Mr. Traylor walking out of the room then why didn't she request Mr. Traylor to close the door behind him, and [If] she was embarrassed why was she "STILL" nude, after Mr. Traylor had talked with the artist for about 3 to 5 minutes describing **Exhibits 1, 2,& 3**?

**92.1**   It is Mr. Traylor's contention that his 14th Amendment to the United States Constitution, together with the Penn Act of the Conn. Gen. Stat. Sec. C.G.S. 54-1l and 54-1m has been violated by the City of New London and its' Police Department.

**92.2**   The circumstances surrounding the Police report did not fit simple trespassing because there were NO signs POSTED and Mr. Traylor was never given any warnings that he should not return to the campus.

**92.3**   The Police report, subject matter seems to appear to be questioning the "English language"…of Mr. Traylor, a "Black Man"…Mr. Traylor doesn't mean what he is saying. Is it because he is a "Black Man?"

**92.4**   Overt discrimination can even be displayed in a person questioning a Black Man to inquire if the Black man really means what he is saying.

**92.5**   The Police report is filled with insecurities that are combined with the misinterpretation of the English language because of a nude white woman's **racial inferiority complex**. This did not constitute simple trespassing. However, it does cause concerns about the cross cultural communications that a Black Man is being subjected to a sociological hostile racial profiling versus a Nude White-Woman not being held to the same standard of law in a public access building.

**92.6**   It would appear that the Police report is questioning Mr. Traylor's history of being a veteran of the United States Army. It is Mr. Traylor's contention that the Police report, the artist, and the "Nude White-Woman" all constituted a violation of the Penn Act by racially profiling Mr. Traylor because of his race and color. They judge Mr. Traylor by the color of his skin, and not by what he was saying, i.e. that his propose for being on the campus was to inquire about a court room sketch artist.

**92.7**   The Defendants only looked at the color of Mr. Traylor's skin and assumed that he did not mean what he was saying. There is NO DISPUTE what Mr. Traylor said to the artist.

**92.8**  Mr. Traylor, does hereby allege that he was "racially profiled", wrongfully detained, and interrogated by both Connecticut College Security and the New London Police through ***disparity in treatment solely on the basis of his race and color.***

93. Each of the Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful action of the discriminatory practice under the color of law, but refused to do so.

94. Mr. Traylor's count number three is controlled by Connecticut Constitution Art.1 Sec. 1, and 20 and THE ALVIN W. PENN RACIAL PROFILING ACT, C.G.S. 54-1l and 54-1m.

95. Mr. Traylor has been harmed due to the egregious actions of the Defendants and their animus based discrimination, their attitude involved liability and an unreasonable risk of causing emotional distress, and if they caused distress, then that distress result in illness and body harm.

**COUNT FOUR: (RETALIATION PRACTICE as to the Defendants, the City of New London and its Police Officer, Sgt. Lawrence M. Keating)**

1-96. Paragraphs 1 through 95 are incorporated and hereby made paragraphs 1 through 96 of the Fourth Count.

96. The above mentioned Constitutional violations, laws of the United States and the State of Connecticut were done in retaliation, negligence and the misrepresentation by the above Defendants through their offices and employees in one or more of the following ways in that they:

**96.1**  It is Mr. Traylor's contention that Sgt. Keating's actions were in fact retaliatory because of a previous CHRO complaint against the New London Police which is presently before the United States District Court,

docket number: #3:11-CV-132 (AWT).

**96.2** **IN THAT** Sgt. Keating of the City of New London Police Department restrained Mr. Traylor without requesting proof of a driver's license as proof of identification.

**96.3** **IN THAT** Sgt. Keating of the City of the New London Police Department, was negligent in calling Mr. Traylor by his first name, Sylvester because he knew that Mr. Traylor had a pending law suit against the City of New London Police Department.

**96.4** **IN THAT** Sgt. Keating was negligent in his retaliation of Mr. Traylor by omitting to record Mr. Traylor's driver's license number on a ticket because they knew him from a local newspaper article one month prior.

**96.5** Interestingly, the police report also contained a photo of Mr. Traylor from The New London Day March 14th, 2011 newspaper article which featured Mr. Traylor's intention to change the State Law regarding the Certificate of Merit that would cost the Insurance Capital, Hartford Connecticut millions. The question is why would the Police Department have a newspaper photo of Mr. Traylor on record, or search for such a photo to include in their report, instead of Mr. Traylor's driver's license photo? See **Exhibit "D".**

97. All of these retaliation activities are no more or less than a denial of Mr. Traylor's equal protection and due process rights, on its face.

98. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful retaliation, but refused to do so.

99. Wherefore, Mr. Traylor has been harmed due to the egregious actions of the above Defendants, and prays for judgment against Defendants as hereinafter set forth.

## COUNT FIVE: (NEGLIGENCE CLAIM as to all parties)

100. Paragraphs 1 through 99 are incorporated and hereby made paragraphs 1 through 100 of the Fifth Count.

100. The liability in this case, does in fact exist through the act of negligence. This arose out of the fact that the Defendants, Laura Newman and Jeremy Nakamara, have openly admitted in a police report that they left the door open.

101. It is hereby submitted that the above Defendants have committed the act of negligence because they failed to make any provision for preventing public indecency in a public access building.

102. In this complaint Mr. Traylor states that it was his belief that the Cummings Art Building was open to the General Public as per stated on the Defendant's, Connecticut College's website.

103. The above mentioned negligence and public nuisance was so egregious in that the Defendants, through their offices, employees, and students in one or more of the following ways:

   a) Failure to follow protective procedures in protecting Mr. Traylor's and the General Public's common rights from being exposed to public indecency.

   b) Failure to enforce CGS. 53a-186 (public indecency);

   c) Created a false sense of justice to Mr. Traylor and to the General Public;

104. Emboldened third parties to continue their illegal public nuisance and egregious actions due to Mr. Traylor's race and color.

105. At all relevant times mentioned herein, Mr. Traylor does hereby sue the above Defendants in his individual capacity and as a member of the General Public because of the public nuisance and the negligent condition which the above Defendants have created that interfered with Mr. Taylor's equal protection rights.

105.1 Mr. Traylor learned about these public access events held on Connecticut College campus through advertisements in The Day, a local newspaper as well as Connecticut College's own web site.

105.2 For example: April 14th –April 16th 2011 Connecticut College held the Senior Dance Department's Senior Thesis Concert, "IMPRINT". See College's link: http://www.conncoll.edu/community/events-on-campus.htm.

105.3 The third level of the Cummings Art Building is advertised as open to the General Public as per their announcement on Connecticut College's own website. The hours that it is open to the General Public are from 8:00A.M. to 5:00 P.M. including Saturdays and during studio classes. See College's link: http://www.conncoll.edu/artsculture/cummings-art-galleries.htm.

106. At all relevant times mentioned herein, Mr. Traylor was lawfully directed to the third level of the Cummings Art Building, by a faculty member of the Art Department at Connecticut College. Mr. Traylor could not avoid the unlawful indecent exposure of the Defendant, Laura Newman because the door was wide open.

107. The Police report supports Mr. Traylor's statement that the door was open:
    *"When I asked about the loud music they agreed that the music was loud.*

*When I asked about the open door they stated the door was ajar but only*
*a little bit, so other Art students who regularly use the private cubicles*
*could enter. They both stated that the door was not left wide open."*

108. There is no dispute as to whether or not Mr. Traylor walked out of a door
without having to touch it in any way. Also, there is *"no dispute"* as to if the
Plaintiff entered an unsecured and opened doorway and/or entered an area
that had no **WARNING** of "private" or "closed to the public". Refer back to
**Exhibit "B"** the photos that clearly depict the doorway in question. On the day
that these photos were taken Mr. Traylor once again approached the same
doorway with the Defendant Mr. Smith who could clearly view the inside of that
studio from across the balcony.

109. Kindly "Take Judicial Notice" of the photos of the Cummings Art Building
marked **Exhibit "B,"** which were taken eight months later after the alleged
incident.

110. The attached photos of Connecticut College clearly depict that they still have
not taken any corrective action to their defective premises that lead to the third
level of the Cummings Art Building by posting the following signs:

      a) ABSENT OF A:  No trespassing signs

      b) ABSENT OF A:  Private property signs

      c) ABSENT OF A:  Keep Out signs

      d) ABSENT OF A:  Closed session signs

      e) ABSENT OF A:  Employees only signs

      f) ABSENT OF A:  Students only sign

      g) Or, a restricted area on the third level of the Cummings Art Building
         where there is nudity.

111. Kindly "Take Judicial Notice" further that the photos which were taken as per
ordered by the Hon. <u>Judge McMahon</u> on December 9th., and 12th, of 2011. See

34

**Exhibit "E."** On December 9th, and 12th., 2011, Mr. Traylor identified the (3) faculty members to whom he had spoken to on April 14, 2011. One of the faculty members was Denise Pellitier, who immediately recognized Mr. Traylor and corroborated his inquiry for an artist to do some courtroom sketches. This same faculty member stated: *"I remember you. Yes, I told you to go up to the third level to inquire if one of the students was interested. "I never requested you to leave the building because I thought the building was open to the public."*

112. As a further result of the negligence and carelessness of the Defendants, Mr. Traylor was required to spend various sums of money for expenses and the Defendant's negligence and carelessness caused Mr. Traylor great emotional distress.

113. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful negligence, but refused to do so.

114. Wherefore, Mr. Traylor has been harmed due to the egregious actions of the Defendants, and prays for judgment against Defendants as hereinafter set forth.

## COUNT SIX (NEGLIGENT MISREPRESENTATION as to all parties)

1-115. Paragraphs 1 through 114, inclusive of the First Count, are herein set forth as Paragraphs 1 through 115, respectively, of the Sixth Count.

115. It is Mr. Traylor's claim that the above Defendants made a negligent misrepresentation to the General Public via both the local newspaper called The Day, and their own website that the General Public is welcome to the third level of the Cummings Art Building while the Defendant, Laura Newman was posed nude, in a public access building.

116. **IN THAT** Mr. Traylor, claims that the above Defendants have intentionally made false representation in an attempt to cover up the fact that the Defendant, Laura Newman, left a door wide open....exposing her nude body, in a public access building that offers concerts and Art exhibits to hundreds and thousands of visitors from the General Public.

117. **IN THAT** Mr. Traylor claims that he could not have avoided the Defendant, Laura Newman's actions which were contrary to CGS. 53a-186 (public indecency) because Mr. Traylor was directed to that area by the Defendant, Denise Pelletier. Once Mr. Traylor arrived at that area, he noticed two young children running from the open doorway where the Defendant, Laura Newman was nude.

118. **IN THAT** the Defendants have clearly created a false representation that under age children are prohibited from entering the third level of the Cummings Art Building.

119. **IN THAT** Mr. Traylor claims that at no time did the Defendants, Laura Newman, Jeremy Nakamara, or Denise Pelletier, ever request him to leave the building because the Defendant, Connecticut College has given the General Public a false misrepresentation concerning their access to the Cummings Art Building.

120. It is a deception and a false representation that Mr. Traylor should have known that he should not have entered the studio after he was directed to that defective area by the Defendant, Denise Pelletier.

121. Connecticut College continues to practice false representation by making false advertisements in both the New London Day newspaper and on their own website that the General Public is welcome to the Cummings Art Building for

concerts and Art Exhibits, without posting any <u>unauthorized and/or closed to</u> <u>the public areas inside the Cummings Art Building.</u>

122. Connecticut College CONTINUES to ignore their responsibility to protect the public from indecency by <u>still not posting</u> any warning signs or by providing areas of non-public access because of nude sketching.

123. The Defendants have <u>done nothing</u> to protect Mr. Traylor and/or the General Public, including under age children, from access and exposure to nudity. This constitutes negligence and created accessibility and exposure to human nudity to under age children without parental consent, and it is contrary to State law to exposing under age children to nudity.

124. The Defendants still have not posted any signs to warn the General Public that the third level is restricted or off limits. The Defendants have attempted to cover up their own negligence by now attempting to defame Mr. Traylor's name. Mr. Traylor has not been found guilty of any alleged "crime" because the Defendants have refused to present witnesses to support their false representation.

124.1  It would appear that the above Defendants are continuing their false representation of Mr. Traylor's character through racial profiling by refusing to present the principle witnesses regarding the alleged crime of simple trespassing. Instead, the above have had an Ex Parte communication with the Hon. Judge McMahon and the State Prosecutor's and requested them to Nollie the prosecution instead of dismissing the alleged crime so that they may continue to defame Mr. Traylor's name in the public.

124.2  **What is an "*ex parte* communication"?** "*Ex parte*" is a Latin phrase meaning "on one side only; by or for one party." An *ex parte* communication occurs when a party to a case, or someone involved with a

party, talks or writes to or otherwise communicates directly with the judge about the issues in the case without the other parties' knowledge. Mr. Traylor has transcripts that can prove that the above Defendants had oral and written communication with the Hon. Judge McMahon without all parties present, an action which constituted a conspiracy to defraud Mr. Traylor of his due process and equal protection rights.

125. The above Defendants were their own and sole author of their own verbal and defamatory remarks which has caused Mr. Traylor to suffer emotional distress, as well as physical and emotional harm resulting from false and erroneous remarks. Mr. Traylor's count number five is negligent infliction of emotional distress and is controlled by Connecticut General Statutes § 52-584.

126. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful negligent misrepresentation, but refused to do so.

127. Mr. Traylor has been harmed due to the egregious actions of the Defendants.

## COUNT SEVEN: (RECKLESS INFLICTION OF EMOTIONAL DISTRESS as to all parties)

1-128. Paragraphs 1 through 127 are incorporated and hereby made paragraphs 1 through 128 of the Seventh Count.

128. In this complaint, Mr. Traylor alleges that he was injured through emotional distress because of the negligent actions of the above Defendants. The above Defendants have caused the Plaintiff to suffer:

128.1 Embarrassment in the presence of others from his community while they were going to a live concert;

128.2  Public humiliation while being questioned by both Connecticut College Campus Security and the New London Police;

128.3  **IN THAT** Mr. Traylor was wrongfully handcuffed and arrested in the public's eyes;

    a) Despite the fact that Mr. Traylor was cooperative with both the Connecticut College Campus Security and the New London Police.

    b) Despite the fact that Mr. Traylor posed no threat to anyone at any time.

    c) Despite the fact that Mr. Traylor's statement was confirmed by both the Connecticut College Campus Security and the New London Police that the doorway to Defendant, Laura Newman nude body on the third level of the Cummings Art Building was in fact wide open, exposing her to the General Public. See (public indecency) See CGS. 53a-186.

    d) Despite the fact that the third level of the Cummings Art Building is advertised to be open to the General Public.

128.4  **IN THAT** the above Defendants treated Mr. Traylor like a common criminal;

128.5  **IN THAT** Mr. Traylor was touched in public, in a demoralizing manner by violently searching his private parts, front and rear <u>without probable cause</u>;

128.6  **IN THAT** once Mr. Traylor was discovered not to have any weapons, the Plaintiff was still put in handcuffs, without reading him his "Miranda Rights";

128.7  Mr. Traylor felt oppressed and dehumanized as he sat handcuffed on the curb without just cause;

128.8  Mr. Traylor alleges that the above Defendants are attempting to cover up their own negligence of the violation of public indecency. See CGS. 53a-186 and public nuisance;

128.9  Mr. Traylor's character has been defamed solely on the basis that he, a Black man who inadvertently glimpsed the nudity of a white woman, Laura Newman, in a public access building, and as a result....the Black man was unfairly mistreated after he attempted to notify Laura Newman that the wide open doorway provided a direct view of her nudity to the General Public;

   a) **IN THAT** the above Defendants defamed Mr. Traylor's character by stating that he was lying about his reasons for the inquiring of a courtroom sketch artist;

   b) **IN THAT** the above Defendants defamed Mr. Traylor's character by stating that he was lying about the fact that a professor had told him to go to the third level to seek out a court room sketch artist;

129.  It is Mr. Traylor's contention that the defamatory actions were in fact committed under the color of law.

130.  Mr. Traylor claims that the above Defendants through their defamation of his character, racial discrimination, negligent and misrepresentation of the State laws and its Constitution, the above Defendants have caused him severe emotional distress, sleeplessness, depression, great mental pain and anguish, including ongoing pervasive memories and flashbacks, all to his loss and detriment for which he has received and will continue to receive professional

counseling.

131. Mr. Traylor has been subjected to emotional distress due to the above
Defendant's egregious actions on April 14, 2011, by creating an unofficial
policy. The Defendants called the New London Police concerning "A Black
Man" who had just viewed a White Female in the nude.

131.1 As Mr. Traylor started to step out of his car and walk towards the New
London Police, Mr. Traylor even had the time to lock his car. As Mr.
Traylor was walking towards the Police car which was facing the opposite
direction of Mr. Traylor's car, the Police officer started to yell at Mr.
Traylor. "Get back in your car!!!" Mr. Traylor then proceeded to turn around
and walk back towards his car, reached into his pocket to get his keys,
and suddenly Mr. Traylor realized that the officer had rushed up on him
…..from the back side in a violent manner, and began to frisk him in the
most demoralizing and violent manner. The Officer put his hands on Mr.
Traylor's private parts (front and rear) addressing him by his first name
SYLVESTER, and asking Mr. Traylor if he had any weapons.

131.2 Mr. Traylor did not have any weapons, but the Police did have weapons
which caused Mr. Traylor emotional distress due to the uncertainty of
whether he could have been killed just by getting his keys in order to get
back into his car.

131.3 The Officer then handcuffed Mr. Traylor, even after the fact that the officer
had searched Mr. Traylor and found no weapons within his possession.
The officer then the made Mr. Traylor sit on the curb behind his car while
still wearing a VETERAN'S hat where people from the General Public
witnessed this wrongful detainment while they were going into a public
access Art building for a concert and/or an art exhibit.

131.4 Mr. Traylor was well dressed, in a sports jacket, dress shirt, slacks, and dress shoes. It is Mr. Traylor's belief that the officer, (an ex-employee of the Defendant, Connecticut College) was responding to an unofficial policy of the Defendant, Connecticut College, but allowed his dispatch description of a Black Man who had just viewed a White Woman over shadow the totality of the circumstances.

132. It is hereby submitted that even after the above Defendants had realized that their conduct was unreasonable due to their own unofficial policy, they disregarded the facts and continued to attempt to humiliate and embarrass Mr. Traylor because of their own unofficial policy which is contrary to CGS. 53a-186 (public indecency).

133. Therefore, through the Defendant's egregious actions and its animus based discrimination, their attitude involved liability and an unreasonable risk of causing emotional distress, and if they caused distress, then that distress might result in illness or body harm.

134. The above Defendants failed to protect Mr. Traylor for his best interest and peace of mind due to the Defendants, Laura Newman and Jeremy Nakamara's negligence, prejudicial manner, and public nuisance which has caused Mr. Traylor embarrassment.

135. Mr. Traylor's count number six emotional distress claim is controlled by Connecticut General Statutes § 52-584.

136. As a further result of the negligence and carelessness of the Defendants, Mr. Traylor suffered extreme emotional distress.

137. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the reckless infliction of emotional distress, but refused to do so.

138. Wherefore, Mr. Traylor has been harmed due to the egregious actions of the Defendants, and prays for judgment against Defendants as hereinafter set forth.

**COUNT EIGHT: (The State Connecticut Constitution Art. 1 Sec. 1, and 20. DUE PROCESS AND EQUAL PROTECTION VIOLATION as to the Defendants, the City of New London and its Police Officer, Sgt. Lawrence M. Keating, in their capacity as State Actors, conspiring with the Defendant, Connecticut College)**

1-139. Paragraphs 1 through 138 are incorporated and hereby made paragraphs 1 through 139 of the Eight Count.

139. Mr. Traylor, an African-American, does hereby allege that the above Defendants together with the Defendant, City of New London and its Police Officer Sgt. Keating, in their capacity as a State Actor has violated State Constitutional rights under Art. First Sec. 1 and 20.

140. The totality of the circumstances surrounding this complaint is that there is evidence of disparity in treatment by the above Defendants through the practice of animus based discrimination because Mr. Traylor is an African-American. Mr. Traylor claims that he is a member of a protected class.

140.1. **IN THAT** anyone who came upon the Connecticut College premises via the internet and/or a newspaper advertisement for concerts and/or to view art exhibits, may have approached the same open doorway of the nude body of the Defendant, Laura Newman.

140.2 **IN THAT** what if a White grandfather or grandmother, would have approached the same door with their grandchildren would they have been treated differently than Mr. Traylor?

140.3 **IN THAT** Mr. Traylor, alleges that the rights of others in the General Public have been violated. In this case, Mr. Traylor, an African-American, inadvertently encountered under age children, as they were running away from a defective premise where a doorway was wide open while Laura Newman was posing in the nude.

140.4 **IN THAT** the Defendants Jeremy Nakamara and Laura Newman have admitted in a police report that they did in fact leave the door in question open and they failed to post any signs regarding close session or restricted area.

140.5 **IN THAT** the actions of Laura Newman created public indecency and a public nuisance which initiated the cause of Mr. Traylor's injury and the defamation of his character. This action has caused Mr. Traylor public embarrassment in being questioned about why he looked back as he was exiting a doorway that was wide open to the General Public. The gist of this case is that a Black man inadvertently glimpsed a nude White woman, Laura Newman, in the nude while in a public access building, and as a result the Black man was unfairly mistreated.

140.6 **IN THAT** due to the unofficial policy of Connecticut College regarding access to the art studios in the Cummings Building, young children who were members of the Williams School Basketball Team were able to observe the nudity of Laura Newman. The Williams School Boys Basketball Team members will testify that they are aware of the fact that there are nude girls in the Cummings Art Building. The William's School is only thirty five (35) feet away from the Cummings Art Building.

140.7 **IN THAT** Connecticut College is required to maintain general, professional, corporate liability insurance coverage, and can be held liable, as the landlord to the Cummings Art Building where they provide public entertainment and art exhibits.

140.8 **IN THAT** Connecticut College has failed to take any steps to remedy the unlawful problem of indecent exposure by protecting, or notifying patrons who enter the Cummings Art Building premises that there is a defect to their third level.

140.9 **IN THAT** Connecticut College has failed and/or neglected to warn the General Public and parents of young children of the nudity and/or post prohibiting signs that underage children are prohibited from entering the Cummings Art Building third level.

140.10 **IN THAT** the Connecticut General Statutes and the Connecticut Practice Book regarding if the State can't find an "absent witnesses" versus if the State is "refusing to call a witness" should NOT change just because Mr. Traylor is an African-American. It would appear that the above Defendants "willfully refused" to be cross examined by Mr. Traylor regarding a crime that they are attempting to defame his character through an **_"assumed"_** guilty verdict.

140.11 **IN THAT** Mr. Traylor, alleges that this is an example, of **INSTITUTIONALIZED RACISM:** Mr. Traylor goes to a store and sees the price of an item which is one dollar ($1.00), but the cashier tells him that the price for that same item is two dollars ($2.00) "for him" because he's an African-American. The state law of simple trespassing is have not been proven before a court of law by presenting witnesses or evidence, but it is abused and/or misapplied to Mr. Traylor with the intent to defame his character, under the color of law. The fact is that the above Defendants continue to influence third parties to fear Mr. Traylor, an African-American,

for a crime of which he has not been found guilty, in an attempt to cover up their own violation of CGS. 53a-186 (public indecency)

141. It is hereby further submitted that the above Defendants, <u>Connecticut College</u>, <u>The City of New London</u> and <u>its Police Officer, Sgt. Lawrence M. Keating</u> have created a false impression of Mr. Traylor's character through the practicing of institutionalized racism.

141.1 It is the Plaintiff's contention that the above State Actors have in fact conspired with "private parties" to retaliate and/or discriminate against the Plaintiff with the intent to deprive the Plaintiff of his 14th. Amendment rights to the United States Constitution.

141.2 The Supreme Court has ruled that "private parties" may be held to the same standard of "state actors" in cases such as the instant cause where the final and decisive act was carried out in conspiracy with a state official.

141.3 **IN THAT** the above "private parties" has conspired with the above State Actors in violation of 18 USC 241: Conspiracy against Rights of Citizens;

141.4 **IN THAT** the above "private parties" has conspired with the above State Actors in violation of 18 USC 3: Accessory after the fact, knowing that an offense has been committed against the United States, relieves, receives, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment,

141.5 Title 42 USC 1983 provides in relevant part that: "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State....subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution....shall be liable to the party injured...."

141.6  A Title 42 1985 action which seeks compensatory and punitive damages in conjunction with equitable relief as in this case is considered a legal claim, entitling Mr. Traylor to a jury trial.

141.7  Mr. Traylor alleges a "class based", invidiously discriminatory animus is behind the conspirators' actions as the Court records reflect and that the actions were clearly a product of bias and prejudice towards Mr. Traylor because of his race and color.

141.8  Section 1985(3) under Title 42 reaches both conspiracies under color of law and conspiracies effectuated through purely private conduct. In this case, Mr. Traylor has alleged a class-based, invidiously discriminatory animus is behind the conspirators' actions.

142.  Also see the State Connecticut Constitution Art. First Sec. 1, and 20 held that:

142.1  Article I, § 1 of the Connecticut Constitution: **"All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."**

142.2  Connecticut Constitution Art. First Sec. 20: **"No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."**

142.3  "Segregation" refers to the "act or process of separation"; Black's Law Dictionary (6th Ed. 1990); or to "the separation or isolation of a race, class, or ethnic group

47

by . . . divided educational facilities, or by other discriminatory means . . . ." Webster's Third New International Dictionary (1961); see Merriam Webster's Collegiate Dictionary (10th Ed. 1993).

142.4  The Fourteenth Amendment to the United States Constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

143.  The second issue raised is whether the Defendants, Connecticut College and/or its agent a former employee Sgt. Keating failure to protect Mr. Traylor, an African-American, from an unlawful prosecution was due to his race and color. The unofficial policy of the Defendant, Connecticut College, did in fact create a violation of Mr. Traylor's rights under the Connecticut Constitution Art. First Sec. 1, and 20?

144.  CGS. 53a-186 (public indecency) has been held constitutionally valid on it's' face. Although the Statute in question has been falsely represented by the above Defendants, this court must send a strong message to the Defendants that they should take preventative measures regarding their policy concerning indecent exposure in a public access building.

145.  The facts of this case are that: (1) The activity in question concerns the fact that the General Public and/or underage children are being exposed to nudity...taking  into consideration the fact that the Williams School is only 35 feet away from the Cummings Art Building ,which is located on the campus of Connecticut College; (2) nudity is conducted without any warning signs, nor are there any secured and/or restricted areas for such activity; and (3) the website:

- http://www.conncoll.edu/community/events-on-campus.htm. clearly does not make any announcement and/or warning of any possible exposure to nudity.

- *"New London offers vibrant and diverse attractions including an expanding downtown scene with a variety of galleries and museums, restaurants and bars, eclectic shops, and historic buildings. The College is an active participant in the New London community and opens its campus to the public."*

146. The question is whether the Defendants and/or its agent a former employee Sgt. Keating violated Mr. Traylor's constitutional rights by treating him differently because of his race and color while Connecticut College was posting an advertisement that the Cummings Art Building was open to the General Public?

- *While* a White-woman was exposed topless and bottomless in a public access building;

- *While* the General Public had access to an Art studio where they may have been able to be unexpectedly subjected to the view of a woman's breast and vagina with her legs wide open while attending a public concert or Art event in the same building;

- *While* from the onset, the nude model did not display any shock or concern when a White police officer entered the room because she was still fully nude and exposed. Nor were there any signs posted after Mr. Traylor, an African American and a member of the General Public had been wrongfully questioned about an unofficial policy of the Defendant, Connecticut College;

- *While* the indecent exposure to underage children constitutes a violation of CGS. 53a-186 (public indecency);

49

147. The critical factors here are that there were no faculty or security staff members present to monitor the nude sketching premises, nor were there any announcements, postings, or warning signs that there was nudity on the third level and/or the existence of a restricted area.

148. It is Mr. Traylor's belief that the above Defendants, its employees, and agents, are engaging in animus based discrimination, and that their attitudes of misconduct are depriving Mr. Traylor of his State Constitutional rights of equal treatment and due process.

149. The above Defendant and its employees, including the named agent had an obligation to enforce and protect Mr. Traylor and the General Public from any unlawful harm.

150. The above Defendant created an (unofficial policy) and its practices in how to deal with its own error of not posting a restricted area to nudity which constitutes an unconstitutional policy. This led to the present complaint before this court.

151. As a result of the aforesaid policies, Mr. Traylor was caused severe emotional distress.

152. As a result of aforesaid unconstitutionality, Mr. Traylor has incurred expenses and Mr. Traylor suffered from a loss of income. Mr. Traylor will continue to suffer from expenses that he will incur in the future as a result of this incident.

153. As a further direct and proximate result thereof, Mr. Traylor lost time from his employment, thereby suffering an economic loss in the form of past and future lost wages.

154. As a further result of aforesaid policies of the defendants, Mr. Traylor suffers emotional anxiety including experiencing flash backs and nightmares.

155. Each of the Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful violation of Connecticut Constitution Art. First Sec. 1 and 20.

156. Wherefore, Mr. Traylor has been harmed due to the egregious actions of the Defendants, and prays for judgment against Defendants as hereinafter set forth.

**COUNT NINE: (Violation of the Connecticut Unfair Trade Practices Act ("CUTPA") as to the Defendants, Connecticut College, Jackson Lewis LLP, and its agent the City of New London)**

1-157. Paragraphs 1 through 156 are incorporated and hereby made paragraphs 1 through 157 of the Ninth Count.

157. Connecticut Unfair Trade Practices Act (CUTPA) Secs. 42-110a — 42-110q cited. Id., 569. Connecticut Unfair Trade Practices Act (CUTPA) cited. 45 Conn. Sup 11. It is hereby submitted that Connecticut College and/or its agent the City of New London has violated CUTPA by failing to remedy a defective premise where its students have admitted to leaving a door wide open, exposing the General Public to nudity.

158. Mr. Traylor claims that the Defendant, CONNECTICUT COLLEGE, has engaged in unfair and deceptive practices in their conduct of trade and commerce while advertising in both the New London Day Newspaper and through their own website that the third level of the Cummings Art Building was open to the General Public.

158.1 **IN THAT** the Defendant's unofficial policy concerning nudity in a public access building is contrary to CGS. 53a-186 (public indecency), contrary to common law, and creates a concept of unfairness if an African-

51

American male views a White-Woman in the nude in a public access building.

158.2 **IN THAT** the Defendant's unofficial policy concerning nudity in a public access building creates immoral and unethical concerns for the underage children that attend the Public events and the underage children that are located only 35 feet away who attend the Williams School.

158.3 **IN THAT** the Defendant's unofficial policy concerning nudity in a public access building has caused Mr. Traylor injury due to emotional distress because of the Defendants willful and malicious misrepresentation of the facts, and the unofficial policy will continue to cause the General Public injury if it is not corrected.

159. Mr. Traylor could not have avoided said injury since the defect of a door left wide open exposing public nudity, without any warning signs posted because at the same time Connecticut College was advertising that the third level was open to the General Public.

160. It is hereby submitted that both Connecticut College and/or its agent the City of New London is practicing institutionalized racism by attempting to use a deception and misleading approach in creating a false representation of Mr. Traylor's character through their denials of this complaint which constitutes a violation of Connecticut General Statutes **Sec. 52-99. Untrue allegations or denials; costs.** Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reasonable expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading; provided no expenses for counsel fees shall be taxed exceeding ten dollars for any one offense.

161. It is hereby further submitted that Connecticut College and/or its agent the City of New London together with their insurance companies is attempting to deceive and mislead Mr. Traylor regarding the indecent exposure in a public access building pursuant to Connecticut General Statutes **Sec. 38a-815. (Formerly Sec. 38-60). Unfair practice prohibited.** No person shall engage in this state in any trade practice which is defined in section 38a-816 as, or determined pursuant to sections 38a-817 and 38a-818 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance, nor shall any domestic insurance company engage outside of this state in any act or practice defined in subsections (1) to (12), inclusive, of section 38a-816.

162. Connecticut College and/or its agent the City of New London, had the duty and obligation to disclose to Mr. Traylor that they were aware of the fact that they had willfully destroyed evidence during a legal proceeding. See Connecticut Unfair Trade Practices Act and Connecticut General Statutes Sec. 38a-815.

- Connecticut General Statutes Sec.  Sec. 53a-155. Tampering with or fabricating physical evidence: Class D felony. Refer back to point number #56 of this complaint, the paper that the Mr. Traylor wrote his name and telephone number has been destroyed.

- It is hereby further submitted that the above Defendants have attempted to mislead and/or fabricate a violation of Connecticut Law regarding public indecency. See CGS. 53a-186

- Also see, the Practice Book Section 2-37, 2-44 rules of Professional Conduct. That an attorney who engages in the intentional spoliation of evidence may face a wide variety of professional sanctions.

163. CUTPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Conn. Gen. Stat. § 42-110b.

164. At all relevant times mentioned herein, the Defendant, CONNECTICUT COLLEGE, was a duly authorized cooperation under the laws of the State of Connecticut. CONNECTICUT COLLEGE is operating with a license to do business with the General Public by advertising for their concerts and Art Exhibits to the General Public.

165. On April 14, 2011, the Defendants, CONNECTICUT COLLEGE, had made the following public announcements:

165.1 Mr. Traylor learned about the public access events held by Connecticut College and advertised through the New London Day Newspaper as well as Connecticut College's own web site. For example:

165.2 The April 14th –April 16th Senior April 16th of the Dance Department's Senior Thesis Concert, "IMPRINT". See links http://www.conncoll.edu/community/events-on-campus.htm.

165.3 Kindly take notice that the third level of the Cummings Art Building is advertised as open to the General Public as per their announcement on Connecticut College's own website. The hours that it is open to the General Public are from 8:00A.M. to 5:00 P.M. including Saturdays and during studio classes. See link: http://www.conncoll.edu/artsculture/cummings-art-galleries.htm.

165.4 On April 14, 2011, the Defendant, CONNECTICUT COLLEGE, was fully aware of Connecticut General Statute concerning public indecency. See CGS 53a-186 (public indecency).

166. The Defendant, CONNECTICUT COLLEGE, is seeking out law firms who will defend cases where their students and/or faculty have practiced institutionalized racism. CONNECTICUT COLLEGE requested the law office of Law Jackson Lewis LLP., to represent them because of their known practices of "institutionalizing" discriminatory complaints by hiring minorities as counsel to litigate on behalf of their client, with the intent to obscure their client's wrong doing.

167. The Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes §42-110a, prohibits unfair or deceptive acts of a business.

168. This count is brought pursuant to Connecticut General Statutes §42-110a in that Mr. Traylor has suffered an ascertainable loss as a direct and proximate result of the ***Defendant, Connecticut College's"*** action of attempting to cover-up their own defect to their policies by trying to discredit Mr. Traylor through defaming his character because of his race and color.

169. The above Defendant, Connecticut College, is practicing misleading and/or making false representation on their web page by claiming that Connecticut College is an "open campus" to the General Public. Refer back to points #7.1-7.3 of this complaint. The Defendants continue to deceive the public by creating misleading and undefined venue areas with the expectation that the General Public "know" or "guess" which areas of the campus are not open to them. If the General Public guesses incorrectly, then they too may be subjected to indecent exposure in a public access building and risk false arrest or fines. Common sense would tell you that the informal policy cited by Connecticut College per the Cummings Art Building is an example of institutionalized racism and was "instantly created" as part of an animus based reaction to Mr. Traylor, a Black man.  Mr. Traylor contends that this is a clear violation of CUTPA

regarding devious practices while engaging in public commerce.

170. Mr. Traylor has suffered severe emotional distress as a result of the Defamation of Character, negligent misrepresentation, pursuant to a violation of the Connecticut Unfair Trade Practice Act (CUTPA).

171. These acts by the Defendant, Connecticut College were a direct and proximate cause to Mr. Traylor's agrievement and violated his rights under the Connecticut Constitution; Article 1, Section 10.

172. The Defendant, Connecticut College has acted in violation of the Connecticut Unfair Trade Practice Act (CUTPA).  Pursuant to Connecticut General Statutes §42-110a in that Mr. Traylor has suffered an ascertainable loss as a direct and proximate result of the Defendants' actions of Defamation/Slanderous remarks.

173. The Defendant, Connecticut College's actions of making defamatory remarks is unlawful, affects public policy, is immoral, unethical, oppressive and unscrupulous and did, in fact, cause substantial injury to Mr. Traylor's character.  Under CUTPA, Mr. Traylor alleges that the Defendant, Connecticut College engaged in deceptive and unfair trade practices, among them deceptive and unfair evasive tactics by making defamatory statements towards Mr. Traylor, which continue to today.

174. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful violation of Connecticut Constitution Art. First Sec. 1, 10 and 20.

175. Pursuant to C.G.S. Sec. 41-110g(c) a copy of this complaint has been mailed to the Attorney General and the commissioner of Consumer Protection.

176. *Wherefore,* the Plaintiff has been harmed due to the egregious actions of the Defendant, Connecticut College and prays for judgment against Defendants as

hereinafter set forth.

## COUNT TEN: (Spoliation and Destruction of Evidence as to all parties)

1-177. Paragraphs 1 through 176 are incorporated and hereby made paragraphs 1 through 177 of the Tenth Count.

177. This count is brought against the above Defendants because they have aided and abetted in the destroying the evidence that Mr. Traylor had good intention in seeking a courtroom sketch artist by given the Defendant, Jeremy Nakamara his correct telephone number (860) 331-4436 on note paper. This note with Mr. Traylor's name and telephone number was necessary to support and affirm his good faith intention to obtain a court room sketch artist, on April 14, 2011,

178. The Plaintiff alleges that the above Defendants have acted in conspiracy, under color of law because Sylvester Traylor is an African-American. Due to the Defendants actions, the Plaintiff, Sylvester Traylor, in his individual capacity and as a member of the General Public has suffered from the destruction of the paper that he wrote his name and telephone number, on April 14, 2011. See the 14th. Amendment to the United States Constitution: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

179. It is hereby submitted that the above Defendants committed the act of depriving the Plaintiff of the ability to examine the vital paper as evidence jointly, and in concert with each other.

180. Each Defendant had the duty and the opportunity to protect the Plaintiff from the unlawful action of the other Defendants, but each Defendant failed and refused to perform such duty, thereby proximately causing the Plaintiff injury.

181. This Spoliation Count is to redress the deprivation by the Defendants of rights secured to the Plaintiff by the Constitution and laws of the United States as well as laws of the State of Connecticut. The Defendants destroyed and/or aided and abetted in the destroying of the Plaintiff's proof of his good intention which were necessary to support his good faith intentions of obtaining a courtroom sketch artist, on April 14, 2011.

182. On April 14, 2011, Mr. Traylor went directly to the artist, Defendant, Jeremy Nakamara to inquire about doing some courtroom sketches. Mr. Traylor gave the artist his correct telephone number (860) 331-4436 and name for a possible art job, to draw the attached Exhibits #1, #2, and #3.

183. Despite Mr. Traylor's sincere attempt to obtain a courtroom artist by giving the Defendant, Jeremy Nakamara his correct name and telephone number, Mr. Traylor still was treated as a common criminal. The question is, why would Mr. Traylor give his correct name and phone number if his intentions were not as he had stated?

184. Upon information and belief, the Defendants had knowledge of a pending or impeding criminal action, immediately on April 14, 2011, and for the following reasons:

    a) On April 14, 2011, Mr. Traylor was given a ticket for simple trespassing of which he clearly stated even the police report that he was not guilty, and that he would plead not guilty.

    b) The Defendants had a legal obligation to preserve evidence. However, in bad faith the Defendants have destroyed the evidence of Mr. Traylor's good intention in seeking a courtroom sketches artist. According to Black's Law Dictionary, Ninth Edition, bad faith is "dishonesty of belief or purpose <the lawyer filed the pleading in bad faith>."

185. Furthermore, the Defendants, the City of New London together with its police officer, Sgt. Keating have intentionally spoliated evidence necessary regarding their dash-cam tape recording of when they arrived on the scene. Sgt. Keating stated: *"Before I could <u>return</u> to my vehicle to get my microphone and turn the camera on…" despite the fact that they viewed Mr. Traylor as "suspicious".*

186. It would appear that Sgt. Keating is giving a deceptive and/or misleading excuse why he did not turn on his dash-cam, but Mr. Traylor finds it peculiar that both Sgt. Keating and Officer Karasuk failed to follow standard police training regarding the use of the microphone and dash-cam in this incident.

187. Both New London Police Officers, Sgt. Keating and Officer Karasuk, are claiming that they failed to turn on their microphones and dash board cameras to record the events of Mr. Traylor's interrogation.

188. It is Mr. Traylor's belief that he was violently frisked and that his private parts were searched for a weapon, and then he was handcuffed without probable cause after he was found without any weapons. Certainly, if Mr. Traylor appeared to be that dangerous, common sense would have told you that a police officer or at least one of the officers would have automatically turned on their microphone and camera before exiting their vehicle while investigating the alleged crime.

189. The Plaintiff contends that it is highly irregular that neither officer can provide microphone and or video footage of this incident. It is hereby submitted that the dash-cam recording has been spoliated.

190. Based upon information and belief, the Defendants have intentionally spoliated the Plaintiff's telephone name and number on a piece of paper as well as their dash-cam recording which is substantial evidence in support of this

action.

191. Such destruction of evidence as afore stated has unfairly prejudiced the Plaintiffs and deprived him of the ability to examine the evidence to the facts of this case.

192. The Plaintiff cannot reasonably obtain access to the same afore said evidence from another source and as such, the Plaintiffs are directly and proximately damaged in the underlying action and cost the plaintiff additional expenses.

193. Therefore, as a result of the Defendants "bad faith tactic" of the spoliation, the Plaintiff is deprived of the evidence to support this claim.

194. The Defendant's intentional withholding, destruction or alteration of evidence was with the intention of disrupting this litigation. Furthermore, the Plaintiff has incurred additional costs through litigation because of the Defendants spoliation.

195. The Plaintiff has been damaged.

196. Wherefore, the Plaintiff has been harmed due to the egregious actions of the Defendants, and prays for judgment against Defendants as hereinafter set forth.

**COUNT ELEVEN: (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING as to the Defendants, Connecticut College and Ulysses B. Hammond, Vice President for Administration)**

1-197. Paragraphs 1 through 196 are incorporated and hereby made paragraphs 1 through 197 of the Eleventh Count.

197. Mr. Traylor repeats and re-alleges the allegations set forth above as though fully set forth herein.

198. The Defendant, Ulysses Hammond VP of Connecticut College, had the opportunity to dismiss the charges against Mr. Traylor, but Mr. Hammond refused to do so in bad faith due to his personal conflict of interest and association with Lawrence Memorial Hospital, Judge Parker and Dr. Bassam Awwa.

199. On September 13, 2011, State Prosecutor David Cardone directed Mr. Traylor to bring this incident to the attention of Ulysses B. Hammond, the VP of Administration for Connecticut College, who is also the Chairman of the Board of Directors for Lawrence Memorial Hospital, that this matter should be quashed or dismissed.

200. Needless to say, Ulysses B. Hammond, Dr. Bassam Awwa, and Judge Parker described Exhibit 1, 2, and 3 all attend an annual Christmas banquet at Lawrence and Memorial Hospital and to which they all contribute money. Mr. Traylor has a pending action against Dr. Bassam Awwa and Judge Parker. See United States District Court, docket number: #3:11-CV-132 (AWT).  Also see **Exhibit "F"** the affidavit by Habibah Abdul-Hakeem, a former Connecticut Superior Court Clerk, regarding disparaging treatment towards Mr. Traylor.

201. However, in bad faith Ulysses B. Hammond, Vice President for Administration, has allowed its employees, the New London Police, and Prosecutors to continue to act under the color of law by ignoring Connecticut College's nude model, Laura Newman's own statement to the New London Police confirming Mr. Traylor's own statement and his purpose of visiting the college.

201.1 **IN THAT** Ulysses B. Hammond, Vice President for Administration was well aware that Mr. Traylor was litigating a medical malpractice action as well

as attempting to change Connecticut State law concerning medical malpractice prior to April 14, 2011.

201.2 On March 14, 2011, the enclosed article by the New London Day newspaper was published indicating that Mr. Traylor was attempting to change State law concerning the Certificate of Merit, CGS 52-190a.

201.3 Immediately after this article was published, Mr. Hammond contacted State Representative Ernest Hewett concerning that he should not encourage and or vote for Mr. Traylor's bill, because it will have an effect on Mr. Hammond's second means of employment at Lawrence Memorial Hospital where he is on the Board of Directors.

201.4 After this discussion with Rep. Hewett, Mr. Hammond invited Rep. Hewett to a meeting which consisted of two hundred doctors who came from all over the State of Connecticut requesting Rep. Hewett not to vote in favor of (HOUSE BILL) HB-6487 concerning the Certificate of Merit.

201.5 Rep. Hewett stated to Mr. Traylor that this was the first time that Mr. Hammond had ever contacted him concerning any article published in the New London Day newspaper.

201.6 Mr. Hammond, in his capacity as the Chairman of the Board of Directors for Lawrence Memorial Hospital was well aware of Mr. Traylor in this community. Mr. Hammond acted in bad faith to defame Mr. Traylor's character because of his opposition to Mr. Traylor's concerns to declare CGS 52-190a, the Certificate of Merit, unconstitutional.

201.7 **IN THAT** Ulysses B. Hammond, Vice President for Administration was in fact negligent in setting up an unofficial policy regarding their students by having open access to an area where full nude sketching was taking place and not posting warnings that such activities were taking place in a public

62

access building.

201.8 **IN THAT** Ulysses B. Hammond, Vice President for Administration was also negligent in acting under the color of law by failing to protect Mr. Traylor from an unlawful infraction even though he was given the opportunity to quash the alleged "crime".

201.9 **IN THAT** Ulysses B. Hammond, Vice President for Administration, Connecticut College and its employees created a false sense of justice for Mr. Traylor while defaming his name under the color of law by calling the New London Police. Mr. Traylor was never aggressive to anyone at any time. Mr. Traylor was composed and posed no threat to anyone at any time.

202. Mr. Traylor believes that the Defendants, Connecticut College, through its Vice President of Administration Ulysses B. Hammond and Head Security Officer, Steward Smith have discriminated against him because of his race and color, Black, and in violation of his civil and constitutional rights.

203. The Defendants continue to operate in bad faith towards Mr. Traylor and the General Public, and in full awareness that they are violating the Connecticut State Law regarding indecency.

204. The Defendants acted in bad faith by not fully investigating Mr. Traylor's claims and allowing the color of law to influence their investigation. The Defendants treated Mr. Traylor in a subservient manner and with animus based discrimination.

205. Each of Defendants had the duty and the opportunity to protect Mr. Traylor from the unlawful violation of Connecticut Constitution Art. First Sec. 1, 10 and 20.

206. **Wherefore,** the Plaintiff has been harmed due to the egregious actions of the Defendant, Connecticut College and prays for judgment against Defendants as hereinafter set forth.

## COUNT TWELVE: (DECLARATORY AND INJUNCTIVE RELIEF as to the Defendant, Connecticut College)

1-207. Paragraphs 1 through 206 are incorporated and hereby made paragraphs 1 through 207 of the Twelfth Count.

207. Mr. Traylor, as a member of the General Public, does hereby move this court for an order declaring the above unofficial policy of Connecticut College concerning indecent exposure in a public access building unlawful and contrary to CGS. 53a-186;

208. Mr. Traylor, as a member of the General Public, does hereby move this court for injunctive relief as to ordering Connecticut College to maintain a secured area for nude art work, so that the Williams School minors, who attend school only 35 feet from the Cummings Art Building, may not easily wander into this public access building.

209. Mr. Traylor, as a member of the General Public does hereby move this court for injunctive relief as to ordering Connecticut College to post the following signs:

    a) No trespassing signs
    b) Private property signs
    c) Keep Out signs
    d) Closed session signs
    e) Employees only signs
    f) Students only sign

g) And/or a restricted area on the third level of the Cummings Art Building where there is nudity.

210. At all relevant times mentioned herein, at no time prior to April 14, 2011 did Mr. Traylor know that the Connecticut College campus was private property. It was Mr. Traylor's belief that the College was named after the State of Connecticut; therefore, Mr. Traylor assumed that the College was a state college, and open to the members of the general public because they also offered events open to the General Public. Mr. Traylor had been on the property of Connecticut College on numerous occasions such as for the remembrance of the Holocaust, to visit the art exhibits, and even had the Writing Tutorial Center edit his book.

211. Mr. Traylor, as a member of the General Public, does hereby move this court for injunctive relief as to ordering Connecticut College to remove its advertising from their website stating that the third level of the Cummings Art Building, and its art exhibits are open to the General Public between the hours of 8:00A.M. to 5:00 P.M. including Saturdays and during studio classes. See College's link: http://www.conncoll.edu/artsculture/cummings-art-galleries.htm

212. Such other relief that this court deems necessary.

213. Wherefore, Mr. Traylor has been harmed due to the egregious actions of the Defendants, and prays for judgment against Defendants as hereinafter set forth.

WHEREFORE, Mr. Traylor claims:

1. Monetary damages;
    1.1 Defamation of Character
    1.2 Common Law Punitive damages
    1.3 Racial Discrimination
    1.4 Retaliation
    1.5 Emotion Distress
    1.6 Negligent Misrepresentation $

2.  Declaratory and Injunctive Relief;

3.  Damages pursuant to Conn. Gen. Stat. Sec. 46a-58(a)(1) 46a-64(a)(1), and 46a-60(a)(4) of the Connecticut General Statutes. Conn. Gen. Stats. §§ 46a-60(a)(5). Conn. Gen. Stats Sec. 52-237. Constitution, State of Connecticut Art. 1 Sec. 10. "All Courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due cause of law."

4.  Interest and cost as to all counts;

5.  Damages for the deprivation of the State of Connecticut Constitution and Federal Constitution of the United States; and

6.  Such other relief that the court/jury determines to be just and equitable.

Dated this: September 6, 2012

THE PLAINTIFF

Sylvester Traylor
881 Vauxhall St. Ext.
Quaker Hill, CT 06375
(860) 331-4436

66

**SUPERIOR COURT**
**STATE OF CONNECTICUT**

CIVIL ACTION No:

SYLVESTER TRAYLOR
      Plaintiff

vs.

Ulysses B. Hammond ET. AL.,
Laura Newman
Jeremy Nakamara
Steward Smith
Denise Pelletier
Connecticut College
Tanya A. Bovée           **JURY TRIAL REQUESTED**
Jackson Lewis LLP          DATE: September 6, 2012
City of New London
Sgt. Lawrence M. Keating
           Defendants

**PRAYER FOR RELIEF**

Frist and foremost, Mr. Traylor, requests a letter of apology from Connecticut College for being the catalyst in creating the above egregious incident by allowing the defect of nudity to be exposed in a public access building. Secondly, Connecticut College should be ordered to correct the defect to their premises. Wherefore, for the above reasons SYLVESTER TRAYLOR has suffered because of the egregious actions by the above Defendants, and he hereby claims monetary damages in excess of $1,200.000.00, exclusive of interest and cost. Mr. Traylor respectfully requests that the Court provide the following relief:

a) **A JURY TRIAL**

b) Monetary Damages;

c) Award Plaintiff fees, cost and damages;

e) Grant such other and further relief as the Court deems just and proper.

THE PLAINTIFFS

/s/ Sylvester Traylor
**Sylvester Traylor**
**881 Vauxhall St. Ext.**
**Quaker Hill, CT. 06375**
**(860) 331-4436**
**Email address:** Syltr02@gmail.com

67

## SOCIOLOGICAL JURISPRUDENCE - EXHIBIT 1



## INSTITUTIONALIZED RACISM

The Petitioner, an African-American, was ordered to obtain an attorney in his "OWN NAME," during a scheduled hearing without all parties present after an Ex Parte communications with the missing party.

## SOCIOLOGICAL JURISPRUDENCE - EXHIBIT 2



## ABUSE OF CONTEMPT POWER

Once the Petitioner, an African-American, obtained an attorney.
His attorney was held in contempt of court for six (6) hours,
without being fined for any wrongful actions.

## SOCIOLOGICAL JURISPRUDENCE - EXHIBIT 3



### INTIMIDATION OF A WITNESS
What would have been the consequences for an African-American Petitioner if the roles had been reversed, and he had reached into the judge's bench to touch a judge?

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

<u>Sylvester Traylor</u>
COMPLAINANT

vs.                                             DATE:  June 6, 2012

<u>Connecticut College</u>
RESPONDENT

CHRO Case No.  1240153

# RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met.  The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 180 days.  The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. § 46a-101(d) without cost or penalty to any party.

Very truly yours,

Robert J. Brothers, Jr.
Executive Director

cc:  Complainant, Sylvester Traylor, via email:  syltr02@gmail.com
Respondent's Attorney, Tanya A. Bovee, via email:  boveet@jacksonlewis.com
Respondent's Contact, Ulysses Hammond, via email:  ulysses.hammond@conncoll.edu

*Exhibit "A"*



**Main Entrance**

- No Gate
- No Posted sign, private property
- No Guard



**Main Connecticut College Sign-**

- No Sign Stating Private School



**William Street Entrance**

- Wide open access from a public road
- No Security Guard
- No Check Points



**William Street Entrance**

- No mention of Public or Private College

1

Exhibit "B"





## South Parking Lot Sign

- No Mention of Check in point for items shipping and receiving

## MAIN ENTRANCE GUARD STATION

- No posted signs for visitors, or directions to the main office
- <u>Unattended</u> Security Guard Office
- Both doors and windows closed



## MAIN ENTRANCE GUARD STATION

- No posted signs for visitors, or directions to the main office
- <u>Unattended</u> Security Guard Office
- Both doors and windows closed

2

Ex. "B"





### The Williams School

- 35 Feet away from the Cummings Art Building where Connecticut College has admitted to indecent exposure

### Cummings Art Building Entrance

- No Signs Posted Private School
- No posted signs prohibiting the underage kids of the Williams School





### Cummings Art Building Court Yard

- Open court yard
- Main entrance to the Cummings Art Building and the Palmer's Auditorium
- No Signs Posted

### Cummings Art Ticket Office

- Concert Open To the General Public
- Visa and Master Card accepted
- Interstate Commerce

3

Ex. "B"





**Cummings Art Main Entrance**

- No Security
- No Signs Posted

**Cummings Art Interior Sign Listing**

**Studios and Instructors**

- No Security
- No Signs Posted





**Cummings Art Second Floor Listing**

**Cummings Art Open Exhibit**

**Lynn Richardson**

**Academy of Uncommon Gardens Gallery**

*Ex. "B"*





**Cummings Art Open Exhibit**

- No Security
- No Signs Posted concerning nudity
- No Signs Posted concerning "Closed Session"

**Cummings Art Open Exhibit**

- No Security
- No Signs Posted
- The only sign posted was for additional Classes to Art Students





**Cummings Art Open Exhibit**

- Exiting the stairway door to the third level
- No Security
- No Signs Posted concerning nudity

**Cummings Art Open Exhibit**

- The only sign posted was for additional Classes to Art Students

5

*Ex. "B"*





**Cummings Art Open Exhibit**

- Stairway doors to the third
  Level
  No Signs Posted

**Cummings Art Open Exhibit**

- The Third Level Art Exhibit as per
  Connecticut College advertisement
- Open between 8am-5pm to the General
  Public
- http://www.conncoll.edu/artsculture/cu
  mmings-art-galleries.htm







**Cummings Art Open Exhibit**

- The Entrance to the studio where the
  Defendant, Laura Newman was
  indecently exposed in a public access
  building.
- No signs of "Closed Session"
- Nor, "Students Only" sign

**Cummings Art Open Exhibit**

- The position of the wide open door
  that exposed the Defendant, Laura
  Newman's nude body
- A Clear view of nudity from the
  opposite side of the balcony.

6

*Ex. "B"*



P917797-5

**COMPLAINT TICKET**
The undersigned officer complains that:

P.D. CASE NO. 11-1536

| ON (Mo., Day, Year) | AT (Time) | IN (Offense Town) | TOWN CODE |
|---|---|---|---|
| 4/14/11 | 1828 _M | NL | 095 |

NAME (Last, First, Middle Initial)
Traylor Sylvester

ADDRESS (No., Street and City)
881 Vauxhall St Ext   Quaker Hill

| STATE | ZIP + 4 | DATE OF BIRTH | RACE | HISP. | SEX |
|---|---|---|---|---|---|
| CT | 06375 | 11/25/61 | B | ☐ Y | M |

### LICENSE AND MOTOR VEHICLE

| DRIVER'S LICENSE NO. | ☐ "X" IF BOATING CERTIFICATE NO. | STATE |
|---|---|---|

| REG. NO. ☐ "X" IF BOAT | STATE | MAKE/MODEL/TYPE | YEAR | COLOR |
|---|---|---|---|---|

OWNED BY (Last, First, Middle Initial)

ADDRESS (No., Street and City)                          STATE

ON (Street or Highway; If intersection, specify)
240 Morgan Ave

| TRUCK (14-26Gn) | OVER 1½K GR. WEIGHT (Overweight Violation) | (CIRCLE IF APPLICABLE) | | ROAD | TRAP. |
|---|---|---|---|---|---|
| ☐ Y   ☐ N | ☐ Y   ☐ N | ACTUAL SPEED | POSTED LIMIT | VIS | AREA |
| DOT # | 18,000 LBS. GR. OR MORE (Overweight Violation) ☐ Y   ☐ N | | | | |

| COMMERCIAL/HAZARD. MAT. | ANSWER DATE |
|---|---|
| ☒ CDL   ☐ CV   ☐ HM | 4/22/11 |

### did commit the following INFRACTION(S)/VIOLATION(S)

| | | STAT./ORD. NO. | AMOUNT |
|---|---|---|---|
| 1. | Simple trespass | 53a-110a | 92 |
| 2. | | | |
| 3. | | | |
| 4. | | | |

SIGNATURE (Officer)                    AMOUNT DUE $ 92 .00

| SHIELD NO. | POLICE DEPARTMENT |
|---|---|
| 659 | New London |

PHOTO I.D. ☒ Y  ☐ N   SIGNATURE (Person receiving this complaint) X

CONNECTICUT SUPERIOR COURT    JD-CR-2  Rev. 8-08

COURT ORIGINAL                    1

*Exhibit "C"*

Case # : CS04142011-000172

| Street Number | Street Direction | Street Name | | Street Type |
|---|---|---|---|---|
| | | MOR | | |

| Apt/Suite | City | State | Zip | Address Type |
|---|---|---|---|---|
| 217 | | | | HOME |

| Street Number | Street Direction | Street Name | | Street Type |
|---|---|---|---|---|
| | | MOR | | |

| Apt/Suite | City | State | Zip | Address Type |
|---|---|---|---|---|
| 217 | | | | HOME |

**Phones :**

| Type | Number |
|---|---|
| HOME | 3347 |
| CELL | 347-528-2818 |

### Contact # 7 (COMPLAINANT)

| Full Name | | |
|---|---|---|
| | | |

| Drivers License | Drivers License State | Email Address |
|---|---|---|
| | | |

| Date of Birth | Age | Gender | Race | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|---|---|---|
| | | M | | 0' | | | |

**Address**

| Steet Number | Street Direction | Street Name | | Street Type |
|---|---|---|---|---|
| | | SMI | | |

| Apt/Suite | City | State | Zip | Address Type |
|---|---|---|---|---|
| 209 | | | | HOME |

**Phones :**

| Type | Number |
|---|---|
| HOME | 3001 |

### Contact # 8 (SUSPECT)

| Full Name | | |
|---|---|---|
| SYLVESTER TRAYLOR | | |

| Drivers License | Drivers License State | Email Address |
|---|---|---|
| | | |

| Date of Birth | Age | Gender | Race | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|---|---|---|
| 11/25/1961 | 49 | M | B - BLACK | 0' | | | |

**Address**

| Street Number | Street Direction | Street Name | | Street Type |
|---|---|---|---|---|
| 831 | | VAUX HALL STREET | | |

| Apt/Suite | City | State | Zip | Address Type |
|---|---|---|---|---|
| | QUAKER HILL | CT | 06375 | |

**Phones :**

| Type | Number |
|---|---|
| CELL | (860)331-4436 |

*Exhibit "D"*

**Vehicle (s) (Motor)**

Login / Register  | 3 premium articles left before you must register.

Join | Rewards | Advertise

**theday.com**
CONNECTICUT


Get the ball rolling.    QUINN·HARY

 

## Local News

SEARCH

TheDay.com ◉ The Web
Web Search powered by YAHOO! SEARCH

# Invisible no more: Widower encouraged after testifying on medical malpractice bill

By Karen Florin

Publication: The Day

Published 03/14/2011 12:00 AM    Updated 03/14/2011 03:58 PM


STATE OF CONNECTICUT SUPERIOR COURT

Tim Martin/The Day

Sylvester Traylor of Quaker Hill is suing his wife's psychiatrist, claiming that he played a role in her suicide.

Buy Photo

✦ SHARE          🖶 PRINT

Sylvester Traylor, who has been waging a legal battle with limited resources since his wife committed suicide seven years ago, said he no longer feels like "the invisible plaintiff."

That's because he has now testified before a legislative committee that is considering a bill to make it easier for people like him to file medical malpractice lawsuits.

Traylor, 49, of New London, sued his wife's psychiatrist, Dr. Bassam Awwa, after Roberta Mae Traylor committed suicide on March 1, 2004. Traylor claims his wife had suicidal thoughts after taking antidepressants, and that Awwa ignored nine of his phone calls seeking help.

Mrs. Traylor, a manager at the former Filene's department store, backed her car into the garage at the couple's home on Vauxhall Street Extension and let the engine run, according to Traylor. The state Office of the Chief Medical Examiner ruled that she committed suicide via carbon monoxide poisoning. She was 46.

"I loved her in life," Traylor said during an interview this week. "I tried to get her help. Now I'm fighting for her in death."

Awwa's practice, Connecticut Behavioral Health Associates, has offices in

New London, Norwich and Stonington. He is affiliated with the Lawrence & Memorial and William W. Backus hospitals. He has been licensed since 1983 and is in good standing, according to the state Department of Public Health.

**Town News**

Choose a town  ▼ | GO!
what is zip06? | my profile
Submit Your:  NEWS  PHOTOS  EVENTS

**Contests & Promotions**


**Freaky Fridays**
Enter each week to win a Halloween goodie bag.


**40 Under Forty**
Nominate someone for the Southeastern Connecticut 40 Under Forty Award.


**Calendar Contest**
Winners have been announced! Pre-order your calendar now.

Pick 'Em: Pro Football | College Football

MORE


Where **students** learn to **grow.** Outside & In.


The **Country School**
education that lasts a lifetime

Learn more at our
**Fall Open House.**
Sunday, Oct. 21
1 p.m. to 3 p.m.

*Ex. "D"*



The Day - Invisible no more: Widower encouraged after testifying on medical malpractice...

Case 3:12-cv-01625-AWT   Document 1   Filed 11/15/12   Page 85 of 104

"There is absolutely no merit to any of the allegations he (Traylor) has raised," said Awwa's attorney, Donald E. Leone Jr. of Norwich.

Since he brought the lawsuit in 2006, Traylor has had sporadic legal representation, but has been "pro se," or representing himself, for much of the time. He has worked at Foxwoods Resort Casino and as a photographer, but is currently unemployed and said he has been having health problems. The court file in his case contains hundreds of legal motions, many written by Traylor. The case is before the state Appellate Court.

His initial complaint has spurred others, including charges of misconduct against judges and attorneys. Traylor is well known in New London Superior Court, where he has spent countless hours in the law library, clerk's office and courtrooms. Still, he said, at times he has felt invisible.

That changed last week when he testified before the Judiciary Committee about a law that requires plaintiffs in medical malpractice cases to attach a "certificate of good faith" from a medical expert with similar credentials to their complaints. Traylor obtained the certificate, but said his case was dismissed "on a technicality" because the letter was not attached to his initial complaint. The bill would make it more difficult for judges to dismiss cases so easily.

"In 2005 they revised this law and ever since then these defense lawyers have flooded courts with motions to dismiss, and judges are dismissing legitimate cases," Traylor said.

Traylor said he testified well beyond his allotted three minutes and that he broke down and cried at one point. While at the Capitol, he said he received support from lawmakers, including state Reps. Betsy Ritter, D-Waterford, and Ernest Hewett, D-New London. He said a lobbyist for the Connecticut Trial Lawyers Association encouraged him, as did many attorneys who represent plaintiffs in medical malpractice suits.

"I was so surprised at how many people knew of my situation," he said.

Physicians generally charge between $2,000 and $10,000 to review a case and provide a certificate of good faith, which courts require as a way to determine whether a case has merit. Traylor said he received a letter from Dr. Howard Zonana, a Yale University psychiatrist and professor, but that his case was dismissed "on a technicality" because the letter was not properly attached to his original complaint.

Traylor said he sat down with Zonana and six other psychiatrists to review the case before Zonana issued the certificate. The Yale doctor wrote in an Oct. 18, 2006, letter that after reviewing Mrs. Traylor's treatment records and other information, Awwa's failure to call Traylor "played a proximate role in the death of the patient as it would have added to concerns re suicidality and prompted more active intervention by the physician."

The proposed law revises the 2005 statute that was intended to help courts weed out frivolous malpractice cases by requiring those who would bring such lawsuits to get an opinion from a medical expert who works in the same field.

"The original intent of the statute was not such a bad thing," said Kelly E. Reardon of The Reardon Law Firm. "The idea of trying to prevent frivolous medical malpractice suits from being filed is a legitimate one. But there have been so many issues that have arisen over the past five years as to how to implement it."

Also, she said, conflicting state Supreme Court decisions have come down since the law was passed, and language that requires plaintiffs to get certificates from a "similar health care provider" is problematic.

Traylor said he is hopeful the legislation passes so that other so-called "pro se litigants" who want to file malpractice lawsuits are not hindered by technicalities.

"All of these people's rights to file a medical malpractice case are being violated," he said.

k.florin@theday.com

*The comment option on this story has been disabled due to the high number of comments that violate our policy.*



The Day on Facebook
Like
7,172 people like The Day.


Jorge    Macho    William    Dick    CaKen

Doug    Elizabeth    Hattie    Nate    Jennifer
Facebook social plugin

CHATS    POLLS    QUERIES


Transcript of Formica, Courtney web debate now available
Incumbent Democratic U.S. Rep. Joe Courtney and Republican challenger Paul Formica participate in a web debate on theday.com.

MORE CHATS

Popular on theday.com

STORIES    MEDIA    DISCUSSED

Most-Read Stories

Police logs for Oct. 15, 2012

Missile cruiser tried to avoid hitting sub

Plum Island lab 'is here to protect the nation'

Prostitute patrons increasingly have nowhere to hide

Opposition expected to dental office in Mystic

Police seek witnesses to Gales Ferry crash

McMahon jumps on gaffe in Murphy submarine ad

Indoor athletic center proposed in Old Lyme


Feel good.
Bank smart.
Click here to learn more.

Savings Institute
Bank & Trust




WE'RE PUTTING THE
"CREDIT"
BACK IN CREDIT UNION!
Loans from
up to $250
CORE PLUS
Federal Credit Union
9 CONVENIENT
CLICK HERE



Ex D



OFFICE OF THE CLERK

STATE OF CONNECTICUT
SUPERIOR COURT G.A. 10
112 Broad Street
New London, CT  06320
Phone:  (860) 443-8343

12/09/2011

Court Order

To Whom It May Concern:

Sylvester Traylor is allowed to enter Connecticut College's Administrative building to solely ascertain the names of potential eyewitnesses to original incident of 04/14/2011 and/or to obtain the names of individuals who could testify as to the administrative policies regarding public access to 470 Mohegan Boulevard.

Hon. Kevin P. McMahon

Exhibit
E



**STATE OF CONNECTICUT**
**SUPERIOR COURT G.A. 10**
112 Broad Street
New London, CT 06320
Phone: (860) 443-8343

OFFICE OF THE CLERK

12/12/2011

Court Order

To Whom It May Concern:

Sylvester Traylor is allowed to enter Connecticut College's Cummings Arts Building to solely ascertain the names of potential eyewitnesses to original incident of 04/14/2011 and/or to obtain the names of individuals who could testify as to the administrative policies regarding public access to 270 Mohegan Avenue.

Hon. Kevin P. McMahon

Exhibit "E"

# DOCKET NUMBER

## UNITED STATES SUPREME COURT

| | | |
|---|---|---|
| SYLVESTER TRAYLOR ET. AL. | : | State of Connecticut Court |
| *Petitioners-Appellants,* | : | DOCKET NO: CV-06-5001159-S. |
| | | |
| V. | : | |
| | : | |
| BASSAM AWWA M.D. ET. AL., | : | Dated: August 10, 2012 |
| *Defendants-Appellees,* | : | |

# Amicus Brief By
# Habibah Abdul-Hakeem
# Concerning Connecticut Judicial Bullying

IN SUPPORT OF THE ABOVE
CAPTIONED MATTER

**Submitted By:**
Habibah Abdul-Hakeem
10 Franklin St. #2,
New London, Connecticut 06320
Tel: 860.514.5140

ORAL ARGUMENT NOT REQUESTED

*Exhibit "F"*

I, Habibah Abdul-Hakeem, I am an African American female, being duly sworn, deposed and say:

1. I am over the age of 18 years old, and believe in the obligation of an oath.

2. I make this affidavit of my own free will because of my personal knowledge and concerns about the institutionalized racism within the New London Superior Court.

3. I am a resident of Connecticut, residing at 10 Franklin St. #2, New London, Connecticut 06320.

4. I have lived in the State of Connecticut since 1974.

5. I am a citizen of the United States of America.

6. I was employed by the New London Superior Court in 2005, as a TAC.

7. In 2005, when I was first employed by the New London Superior Court located at 70 Huntington Street, New London Connecticut 06320, I immediately observed the fact that I was the only African-American employed as a clerk.

8. On one occasion, during my initial stage of employment, Mr. Sylvester Traylor of Quaker Hill, Connecticut, came to the clerk's window while conducting a civil litigation matter and introduced himself as a Life Member of the NAACP. Mr. Traylor informed me that he had filed a complaint prior to my employment that there were no African-American clerks or Judges, employed at the New London Superior Court.

9. Immediately after this conversation with Mr. Traylor, I was made to feel and believe by upper management, that Mr. Traylor, an "African American" was going to enter the court some day with a gun and shoot and kill everybody by going "postal".

10. Upper management caused me to further question Mr. Traylor's credibility and demean him because he was indigent and an African American.

Ex "F"

11. There was, in fact, disparaging treatment towards Mr. Traylor. It is my belief that I was deliberately influenced by my co-workers that Mr. Traylor did not have a legitimate lawsuit. However, I later learned that he had in fact obtained a Certificate of Merit to support his complaint by the Director of Medicine at Yale University, who had signed a letter instructing the court that Mr. Traylor did in fact have a legitimate complaint of medical malpractice.

12. In my opinion, the animus based discrimination by the New London Superior Court towards Mr. Traylor, was in fact intended to discredit him, and this discrimination lessened his chances of obtaining a jury trial.

13. I have never observed Mr. Traylor threatening violence towards any of the State of Connecticut Judges or staff. I believe that the State of Connecticut employees did, in fact, conspire and retaliate against Mr. Traylor, as a Life member of the NAACP, for making a complaint against the New London Superior Court's officials and staff.

14. On a personal note, it is my belief that after years of employment by the court, they used the same tactic and mode of operation against me to cause fear based on race and attempted to sway others into believing that I, "an African American," was going to enter the court and shoot and kill everybody with a gun, thus going "postal".

15. Additionally, management influenced my co-workers to make the same falsehood against me via a petition signed by only white employees, which was based on animus based discrimination. Their attitude was in fact discriminatory against both Mr. Traylor and me because of our race.

## IN CONCLUSION

16. Between 2010 and 2011, the New London Superior Court clerk's office staff received a memo of concern from Jorene Couture, Chief Clerk, which outlined concerns that Court Operations had regarding our "handling" of the public at

*Ex "F*

large. The memo was issued by Ms. Couture after receiving a report from Court Operations indicating that they had sent "secret shoppers" to observe the staff's work habits and daily interaction with the public. After this memo was issued by Jorene Couture, Ms. Couture announced that she alone would "handle" Mr. Traylor whenever he came into the clerk's office for assistance. It is my belief that Mr. Traylor was in fact singled out because everyone knew that he had made a complaint to our Human Resource Office concerning our disparaging treatment.

17. From 2010-2011, I also personally observed unusual behavior by Judge Thomas F. Parker in relation towards Mr. Traylor regarding the civil litigation of Traylor v Awwa, docket number CV-06-5001159-S. I noted that Judge Parker would keep Mr. Traylor's file under lock and key in his chambers. Judge Parker would even request the clerks and staff to inform him whenever Mr. Traylor had entered the court, and to inform him of the exact nature of Mr. Traylor's business.

18. Clearly, the Connecticut Judicial System needs to clean up it's act as evidenced by the disparity in treatment in both my complaint and Mr. Traylor's complaint. The disparity of treatment in POWER by judges and court clerks is reminiscent of a playground bully of our childhood which is improper and unnecessary.

19. I, Habibah Abdul-Hakeem, do hereby attest to and affirm, and support the fact that the New London County Superior Court located at 70 Huntington St. New London, Connecticut 06320 did in fact conspire to deprive Mr. Traylor of his civil rights to have a fair trial by a jury. This was a form of retaliation against Mr. Traylor through the practice of animus based discrimination and caused state employees to fear Mr. Traylor because of his race and color.

20. The bottom line is that institutional racism does exist in the Judicial Branch, and especially in the New London County Judicial District via the practices of nepotism, cronyism, race, age, sexual and gender discrimination, harassment and bullying of which Mr. Traylor and I have repeatedly faced by State Employees. It is my belief that Mr. Traylor was in fact denied his access to court.

Ex "F

I further believe that Judicial Bullying based on race and color should be eradicated. There is a definite need for the creation of a Healthy Workplace Environment, as well as, improvement of services to all members of the general public, minus the public bullying based on race and economic status.

I, Habibah Abdul-Hakeem, being first duly sworn under oath according to the law, deposes and says that I, Habibah Abdul-Hakeem, have read the foregoing Affidavit which I have subscribed, that the matters stated herein are true to the best of my knowledge and belief.

Habibah Abdul-Hakeem
10 Franklin St. #2,
New London, Connecticut  06320
Tel: 860.514.5140

Subscribed and sworn to before me

Notary Public or Commissioner of
the Superior Court   Elizabeth A.
My Commission   Sabjlia
Expires:_____.

Ex "F"

## SUPERIOR COURT
## STATE OF CONNECTICUT

**SYLVESTER TRAYLOR**
      **Plaintiff**

vs.

CIVIL ACTION No:

**Ulysses B. Hammond ET. AL.,**
**Laura Newman**
**Jeremy Nakamara**
**Steward Smith**
**Denise Pelletier**
**Connecticut College**
**Tanya A. Bovée**
**Jackson Lewis LLP**
**City of New London**
**Sgt. Lawrence M. Keating**
      **Defendants**

**JURY TRIAL REQUESTED**
DATE: October 16, 2012

### NOTICE

The Plaintiff, Sylvester Traylor does hereby give **"NOTICE"** to the following facts:

### RELEASE OF JURISDICTION

Kindly find attached the release of jurisdiction from STATE OF CONNECTICUT COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES, pursuant to CONN. GEN. STAT. § 46a-101. The Commission on Human Rights and Opportunities has released its jurisdiction over the above complaint involving **_"all"_** of the above defendants.

This Complainant is authorized to commence via Connecticut Superior Court in accordance with CONN. GEN. STAT. § 46a-100 against the above Defendants in the judicial district in which the discriminatory practice has been alleged, or in the district where the Defendants transacts business.

Kindly find attached three (3) separate Right-To-Sues that involved the above Defendants, marked Exhibit A, B, and C.

Wherefore, the Plaintiff does hereby serve a copy of the attached Right-To-Sue, on all parties.

Dated this: October 16, 2012

THE PLAINTIFF


Sylvester Traylor
88? Vauxhall St. Ext.
Quaker Hill, CT 06375
(860) 331-4436

## CERTIFICATION

I hereby certify that a copy of the foregoing NOTICE was hand delivered to all parties a State Marshal.

Respectfully Submitted,

Dated this: October 16, 2012.              THE PLAINTIFFS

                                  /s/ Sylvester Traylor
                                  Sylvester Traylor
                                  881 Vauxhall St. Ext.
                                  Quaker Hill, CT. 06375
                                  (860) 331-4436
                                  Email: syltr02@gmail.com

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Sylvester Traylor
COMPLAINANT

DATE:  June 6, 2012

vs.

Connecticut College
RESPONDENT

CHRO Case No.  1240153

# RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served.  THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met.  The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 180 days.  The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. § 46a-101(d) without cost or penalty to any party.

Very truly yours,

Robert J. Brothers, Jr.
Executive Director

cc:   Complainant, Sylvester Traylor, via email:  syltr02@gmail.com
Respondent's Attorney, Tanya A. Bovee, via email:  bovee@jacksonlewis.com
Respondent's Contact, Ulysses Hammond, via email:  ulysses.hammond@conncoll.edu

*Exhibit "A"*

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Sylvester Traylor
COMPLAINANT

CHRO No.  1210443

vs.

EEOC No.  N/A

Jackson Lewis LLP, et al.
RESPONDENT

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.

The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION   BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

Date:  October 16, 2012

_____
Robert J. Brothers, Jr., Executive Director

Service:
Complainant: Sylvester Traylor, via email 2yltr02@gmail.com
Respondent: Beverly W.Garofalo, Esq., via email garofalob@jacksonlewis.com

*Exhibit B*

**STATE OF CONNECTICUT**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**

<u>Sylvester Traylor</u>
COMPLAINANT

CHRO No.  1240152

vs.

<u>City of New London</u>
RESPONDENT

## <u>RELEASE OF JURISDICTION</u>

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.

The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION   BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

<u>October 16, 2012</u>
DATE

_____
Robert J. Brothers, Jr.
Executive Director

Service:
Complainant: Sylvester Traylor, via email:  syltr02@gmail.com
Respondent's Attorney:  Maciej A. Piatkowski, via email:  mapiatkowski@ryandelucalaw.com

*Exhibit "C"*

EXHIBIT B

STATE OF CONNECTICUT   )          New London        Oct. 17          , 2012
                       ) SS: _____
COUNTY OF NEW LONDON)

Then and there by virtue hereof, I left a true and attested copy of this the original Writ, Summons & Complaint _____ ~~with and in the hands x~~ at the usual place of a~~bode~~ - of the within named defendant, Denise Pelletier _____

at said ____ 270 Mohegan Ave. New London Ct. _____.

And afterwards on the __17th__ day of ____ Oct. ____, 20 __12__, I left a true and attested copy of the original ____ Writ, Summons & Complaint ____, ~~with and in the xx~~ ~~hands at the usual place of abode~~ of the within named defendant, Connecticut College C/o Ulysses B. Hammond _____

at said ____ 270 Mohegan Ave. New London Ct. _____.

And afterwards on the __17th__ day of ____ Oct. ____, 20 __12__, I left a true and attested copy of the original ____ Writ Summons & Complaint ____ ~~x with and in the xx~~ ~~hands x~~ at the usual place of a~~bode~~ - of the within named defendant, Steward Smith _____

at said ____ 270 Mohegan Ave. nEw London CT. _____.

The within and foregoing is the original ____ Writ, Summons & Complaint ____, with my doings endorsed hereon.

Attest:

*Harry J Sakowsky*

STATE MARSHAL

FILE[

OCT 19 2012

SUPERIOR COURT
~w London Judicial Dist

Fees:

| | | |
|---|---|---|
| Defendant(s) ............................. $ | 90.00 |
| Travel ......................................... $ | 2.22 |
| Pages ......................................... $ | 297.00 |
| End ............................................. $ | 4.80 |
| Total $ | 393.02 |

STATE OF CONNECTICUT   )
                       ) SS: __New London__ Ct     __10/16/12__ , 20 _.
COUNTY OF NEW LONDON)

Then and there by virtue hereof, I left a true and attested copy of this the original
__Writ,Summons & Complaint_____ with and in the hands - at the

~~usual place of abode~~ of the within named defendant, __Town Clerk City of New London__

at said __181 State St. New London Ct._____.

And afterwards on the __16th__ day of __Oct_____ , 20__12__ , I left a true and attested

copy of the original __Writ,Summons & Complaint_____ , with and in the

hands - at ~~the usual place of abode~~ of the within named defendant, __Lawrence M.Keating__
C/o New London Police Dept. Records Dept.

at said __Main St. New London Ct._____.

And afterwards on the __17th__ day of __Oct._____ , __2012__ , I left a true and attested

copy of the original __Writ Summons & Complaint_____ , with and in the

hands - at the usual place of abode - of the within named defendant, __Ulysses B.Hammond__

at said __270 Mohegan Ave. New London Ct._____.

The within and foregoing is the original __Writ,Summons & Complaint_____ ,

with my doings endorsed hereon.

Attest:

_[signature]_
STATE MARSHAL

Fees:

Defendant(s) .............................. $    90.00

Travel ........................................ $     2.22

Pages ......................................... $   297.00

End .............................................. $     4.80

Total              $   304.02

FILED

OCT 1 9 2012

SUPERIOR COURT
New London Judicial Dist

STATE OF CONNECTICUT   )
                       ) SS:  Hartford Ct.          Oct. 17    , 2012
COUNTY OF NEW LONDON)

    Then and there by virtue hereof, I left a true and attested copy of this the original Writ, Summons & Complaint                                xxxxxxxxxxxxxxx - at the

usual place of abode - of the within named defendant, Agent for service for Laura Newman Tanya A.Bovee Jackson Lewis LLP

at said   90 State House Sq. Hartford Ct.

    And afterwards on the 17th day of Oct.        , 20 12 , I left a true and attested copy of the original   Writ, Summons & Complaint        , xxxxxxxxx

xxxxxx at the usual place of abode - of the within named defendant, Agent for service for Jeremy Nakamara   Tanya A.Bovee ,Jackson Lewis LLP

at said   90 State House Sq. Hartford Ct.

    And afterwards on the 17th day of Oct.        , 20 12 , I left a true and attested copy of the original   Writ Summons & Complaint        , xxxxxxxxx

xxxxx at the usual place of work - of the within named defendant, Atty. Tanya A Bovee

at said   90 State House Sq. Hartford Ct.

    The within and foregoing is the original   Writ, Summons & Complaint    , with my doings endorsed hereon.

Attest:

*[signature]*
STATE MARSHAL

Fees:
Defendant(s) ............................ $  90.00
Travel ..................................... $  13.00
Pages ..................................... $ 297.00
End ........................................ $   4.80
    Total              $ 404.80

FILED
OCT 19 2012
SUPERIOR COURT
New London Judicial Dis

NLC—2

STATE OF CONNECTICUT)          Oct. 17/12
                              ss:
COUNTY OF NEW LONDON)          Hartford Ct.

Then and by virtue of the original writ and by direction of the plaintiff's attorney, I left a true and attested copy of the original writ, summons and complaint — ~~with and xxx the handxxx~~ at the usual place of abode — of the within named defendant, _Lewis Jackson LLP_

at said _90 State House Sq. Hartford Ct._

And afterwards on the _17th_ day of _Oct. 2012_

I left a true and attested copy of the original writ, summons and complaint by certified Mail — ~~xxxxx and xxx the handxx xxxx the usual place xxx xxxxx~~ of the within named defendant, _Attorney General State Of Connecticut_

at said _55 Elm St. Hartford Ct._

The within and foregoing is the original writ, summons and complaint with my doings hereon endorsed.

ATTEST:

_Garry J Sahowsky_

State Marshal

FILED

OCT 19 2012

SUPERIOR COURT
New London Judicial Dist.

Travel.............$    19.00
Service...........      60.00
Copies............     198.00
Endorsement.......       3.20
        Total...$      284.20

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2012, a copy of the above was mailed to the

following counsel and pro se parties of record:

Sylvester Traylor
881 Vauxhall Street Ext.
Quaker Hill, CT 06375
Attorney for Pro Se, Claimant

Beverly W. Garofalo, Esq.
Jackson Lewis, LLP
90 State House Square
8th Floor
Hartford, CT 06103
Attorney for Defendant, Jackson Lewis, LLP and Tanya A. Bovee, Esq.

Christopher T. Parkin, Esq.
Winget, Spadafora & Schwartzberg
177 Broad Street, 10th Floor
Stamford, CT 06901
Attorney for Defendant, Ulysses B. Hammond, Steward Smith, Denise Pelletier, Connecticut
College


___/s/_____
Maciej A. Piatkowski, Esq.

415.104
415.104