UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
SYLVESTER TRAYLOR,            :
                              :
            Plaintiff,        :
                              :
v.                            :   Civil No. 3:12cv01625(AWT)
                              :
ULYSSES B. HAMMOND,           :
LAURA NEWMAN, JEREMY NAKAMARA,:
STEWARD SMITH,                :
DENISE PELLETIER,             :
CONNECTICUT COLLEGE,          :
TANYA A. BOVEE,               :
JACKSON LEWIS LLP,            :
CITY OF NEW LONDON, and       :
LAWRENCE M. KEATING,          :
                              :
            Defendants.       :
                              :
------------------------------x
```

<u>**RULING ON MOTIONS TO DISMISS**</u>

In the Amended Complaint (Doc. No. 39), which is the

operative complaint, plaintiff Sylvester Traylor asserts claims

against defendants Ulysses B. Hammond, Steward Smith and

Connecticut College (the "Connecticut College Defendants"); the

City of New London and Sergeant Lawrence M. Keating (the "New

London Defendants"); and Laura Newman and Jeremy Nakamara (the

"Individual Defendants") for defamation of character (Count

One), municipal liability (<u>Monell</u> claim) pursuant to 42 U.S.C. §

1983 (Count Two), discriminatory practice in violation of the

Constitution and statutes of Connecticut (Count Three),

-1-

retaliation practice in violation of Section 1983 (Count Four), negligence (Count Five), negligent infliction of emotional distress (Count Six), violations of, and conspiracy to violate, due process and equal protection guarantees under federal and state law (Count Seven), spoliation and destruction of evidence (Count Eight) and declaratory and injunctive relief (Count Nine).

The defendants have moved to dismiss each claim pending against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the reasons set forth below, the motions to dismiss are being granted, except with respect to Count Seven, the claim under the Connecticut Constitution against defendants Lawrence M. Keating and the City of New London, which is being remanded to state court.

## I.    FACTUAL ALLEGATIONS

The Amended Complaint, "which [the court] must accept as true for purposes of testing its sufficiency," alleges the following circumstances. Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997).

On April 14, 2011, Traylor went to Connecticut College "with the intention of locating an artist who he wished to commission to make artistic renderings of his appearances before

---

[1] The Connecticut College Defendants, New London Defendants and Individual Defendants separately filed motions to dismiss the counts pending against them.  (See Doc. Nos. 92, 94, 108.)

New London Superior Court" in an unrelated matter.  (Am. Compl.
¶ 49.)  Traylor went to the Cummings Art Building, which he
believed was open to the public based on information posted on
Connecticut College's website, and spoke to three faculty
members on the second level of the building.  One of the faculty
members he spoke with, Denise Pelletier, told Traylor that
"someone, maybe on the third (3rd) level, might be able to do
the [artwork]."  (Am. Compl. ¶ 53.)  Traylor proceeded to the
third level where he heard loud music and saw two young children
running from a doorway.  Through the doorway, Traylor was able
to see a nude woman, defendant Newman, who was posing for an
artist.  Traylor went through the doorway and directly to the
artist, defendant Nakamara, to inquire about having him complete
the courtroom sketches he sought.  Newman did not cover-up or
ask Traylor to leave.  Traylor spoke with Nakamara for three to
five minutes, gave Nakamara his phone number and then left,
turning back to say "I'm sorry for interrupting your session!
Have a nice day."  (Am. Compl. ¶ 53, 69, 93.)

     As he walked back to his car, Traylor noticed a security
officer "talking on what looked like a cell phone or radio."
(Am. Compl. ¶ 54.)  Once he was in his car, Traylor proceeded to
the campus exit, but then decided to turn around.  Traylor
approached the security officer and asked "whether the security
officer was looking for him because of his continual stare in

Mr. Traylor's direction." (Am. Compl. ¶ 55.) The officer asked Traylor whether he had recently been on the third level of the Cummings Art Building and Traylor confirmed that he had and that he was there because he was looking for an artist to do some courtroom sketches. Traylor told the security officer that he had given Nakamara his name and telephone number.

At that point another security officer arrived. Traylor suggested that the first officer confirm his statement with Nakamara, and the officer agreed to do so. One or two minutes later, defendant Keating arrived. Keating is a City of New London police officer who was previously employed as a security guard at Connecticut College.

Traylor stepped out of his car, locked it, and began to walk towards Keating's police car. "[T]he Police officers started to yell at Mr. Traylor 'Get back in your car!!!'" (Am. Compl. ¶ 60.) Traylor turned and began walking back towards his car and reached into his pocket to retrieve his car keys. As he did so, one of the police officers approached Traylor from behind and began to frisk him. The officer, addressing Traylor by his first name, asked him whether he had any weapons, to which Traylor responded that he did not. Traylor further stated that he was on campus to hire an artist to do some artwork. The officer then looked in Traylor's car, saw a Coast Guard Academy

bag and asked Traylor what he was doing with the bag. Traylor indicated that he was a veteran.

Keating handcuffed Traylor and made him sit on the curb behind his car where passersby were able to see him.  Keating "interrogated [Traylor] while in handcuffs" and did not read Traylor his Miranda rights.  (Am. Compl. ¶ 64.)  The other officer also asked Traylor why he was on campus.  Additionally, neither Keating nor the other officer asked Traylor for his driver's license and neither officer turned his microphone or "dash-cam" on during the incident with Traylor.  (Am. Compl. ¶ 66, 147.)

After the security officer had confirmed Traylor's account with Newman and Nakamara, Keating and the security officers asked Traylor if he had "looked back" at Newman as he was exiting the room that she and Nakamara were in.  (Am. Compl. ¶ 68.)  Traylor stated that he had and that he had done so to see if Newman knew that "the door was wide open and that the open door allowed the General Public to view her."  (Am. Compl. ¶ 69.)

Keating directed the other police officer to issue Traylor a citation for trespassing.  The police report associated with the incident reflects that Traylor had told Nakamara and Newman that he was looking for an artist to complete courtroom sketches

for him, but Nakamara and Newman felt that Traylor was not being truthful.

Prior to going to Connecticut College on April 14, 2011, Traylor had filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") against the City of New London.

## II.  LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007), citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557 (internal quotation marks omitted)).  "Factual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all allegations in the complaint
are true (even if doubtful in fact)." Twombly, 550 U.S. at 555
(citations omitted).  However, the plaintiff must plead "only
enough facts to state a claim to relief that is plausible on its
face." Id. at 570. "The function of a motion to dismiss is
'merely to assess the legal feasibility of the complaint, not to
assay the weight of the evidence which might be offered in
support thereof.'" Mytych v. May Dept. Store Co., 34 F. Supp.
2d 130, 131 (D. Conn. 1999), quoting Ryder Energy Distribution
v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.
1984).  "The issue on a motion to dismiss is not whether the
plaintiff will prevail, but whether the plaintiff is entitled to
offer evidence to support his claims." United States v. Yale
New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing
Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a
claim, the court may consider "only the facts alleged in the
pleadings, documents attached as exhibits or incorporated by
reference in the pleadings and matters of which judicial notice
may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12,
15 (2d Cir. 1993).

When considering the sufficiency of the allegations in a
pro se complaint, the court applies "less stringent standards
than [those applied to] formal pleadings drafted by lawyers."

-7-

Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint "to raise the strongest arguments [it] suggest[s]." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## III. DISCUSSION

As an initial matter, Traylor contends that the defendants' motions to dismiss are barred by collateral estoppel and the law of the case doctrine because the court already ruled on the defendants' arguments in its Order re Dismissal of Certain Claims and Scheduling (Doc. No. 28) ("Order re Dismissal"). (See Plaintiff's Motion to Renew His Pending Objections, Memorandum in Support of Plaintiff's Objection (Doc. No. 55) ("Plaintiff's Mem.") at 7-10.) This argument is without merit.

The court has not previously ruled on many of the issues presented by the defendants in the instant motions, and to the extent issues were ruled on, the ruling was in favor of the defendants. The Order re Dismissal followed a lengthy status conference with the parties, the purpose of which was to clarify the basis for the claims Traylor made in his original complaint. In the Order re Dismissal, the court granted Traylor leave to amend his complaint and specifically stated that the defendants would have an opportunity to file motions to dismiss thereafter. After Traylor amended his complaint, the defendants properly

filed the instant motions to dismiss.[2]  Because the issues in the instant motions either have not been ruled on, or any ruling was in favor of the defendant(s), neither collateral estoppel nor the law of the case doctrine precludes the instant motions.[3]

### A.    Federal Law Claims

The court first addresses the sufficiency of the federal claims pending against the defendants: Count Two; Count Four; and the Count Seven due process, equal protection and conspiracy claims pursuant to Sections 1983 and 1985.[4]

### 1.    Count Two: Monell Claim, as to City of New London

Section 1983 provides, in relevant part, that:

---

[2] The court notes that it denied the motions to dismiss that the Connecticut College Defendants and New London Defendants filed after Traylor amended his complaint.  However, it did not do so on the merits, but because Traylor had filed an interlocutory appeal.  The motions to dismiss were denied "without prejudice to renewal after the completion of the interlocutory appeal that the plaintiff has filed in this case." (Electronic Orders of March 15, 2014 (Doc. Nos. 81, 82).)  The defendants properly filed the instant motions after Traylor withdrew his appeal.  (See Mandate of the United States Court of Appeals for the Second Circuit (Doc. No. 91).)

Regarding the Individual Defendants, the court granted their initial motion to dismiss, with leave for Traylor to properly serve them.  (See Order re Defendants Nakamara and Newman's Motion to Dismiss (Doc. No. 68).)  After the court found that Traylor had served the Individual Defendants, they filed their instant motion.  (See Electronic Order of 08/27/2014 (Doc. No. 103).)

[3] See United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999) ("Collateral estoppel, or issue preclusion, applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.") (internal citations and quotation marks omitted); Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) (stating that the law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise") (internal quotation marks and citations omitted).

[4] Pursuant to the Order re Dismissal, all claims based on federal law in Count Three are incorporated into Count Seven.  (See Order re Dismissal at 3.)

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured . . . .

42 U.S.C. § 1983.  As established in Monell v. Department of

Social Services, 436 U.S. 658 (1978), Section 1983 "imposes

liability on a government that, under color of some official

policy, 'causes' an employee to violate another's constitutional

rights." Id. at 692. The Second Circuit has explained that

under the Monell standard,

> a municipality can be held liable under Section 1983
> if the deprivation of the plaintiff's rights under
> federal law is caused by a governmental custom,
> policy, or usage of the municipality.  Absent such a
> custom, policy, or usage, a municipality cannot be
> held liable on a respondeat superior basis for the
> tort of its employee.

Jones v. Town of E. Haven, 691 F.3d 72, 80-82 (2d Cir. 2012)

cert. denied sub nom. Jones v. Town of E. Haven, Conn., 134 S.

Ct. 125 (2013) (internal citations omitted).  Thus, to establish

Monell liability, a plaintiff must show, in addition to a

deprivation of his constitutional rights:

> (1) the existence of a municipal policy or custom . .
> . that caused his injuries beyond merely employing the
> misbehaving officer[s] and (2) a causal connection —
> an affirmative link — between the policy and the
> deprivation of his constitutional rights.

Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011)
(summ. order) (citing Vippolis v. Vill. of Haverstraw, 768 F.2d
40, 44 (2d Cir. 1985)) (internal quotation marks omitted).

The City of New London argues that Count Two should be
dismissed because Traylor "failed to allege any facts that
plausibly state" that a municipal policy or custom caused
constitutional violations that he claims to have suffered.[5] (City
of New London Memorandum in Support of Renewed Motion to Dismiss
(Doc. No. 92) ("New London and Keating Memorandum of Law") at
13.)  The court agrees.

In support of his Monell claim, Traylor alleges that he was
detained by Keating on April 14, 2011 and that the City of New
London "had in effect de facto policies, practices, and customs
exhibiting deliberate indifference to the constitutional rights
of citizens and residents of New London, which were a proximate
cause of [Keating's] unconstitutional conduct."  (Am. Compl. ¶
83.)  Traylor lists five such policies, practices, and customs:

> (1) "failure to properly screen, supervise,
> discipline, transfer, counsel, and/or otherwise
> control police officers . . . particularly those
> police officers who are repeatedly accused of such
> acts;" (2) "failure to properly train, provide
> guidelines and supervise police officers in conducting
> a reasonable search or seizure;" (3) a "police code of
> silence wherein police officers regularly cover-up
> police unlawful conduct . . . ;" (4) "failure to
> adequately train and provide guidelines for

_____

[5] Traylor does not respond to the City of New London's arguments, except to
argue that the court has already ruled on the sufficiency of his claim, as
discussed above.

-11-

facilitating lifesaving medical treatment for detainees;" and (5) "social and work mores of the New London Police created an atmosphere and culture in which malicious treatment of citizens is tolerated."

(Am. Compl. ¶¶ 84a-84f.)

However, Traylor fails to allege any facts that would support a finding that the City of New London had adopted any of the policies, practices or customs he identifies or that they led to the events of April 14, 2011. Taylor's allegation that Officer Keating mistreated him on one occasion and his conclusory allegations about the City of New London having certain policies, practices or customs are insufficient to state a Monell claim. See Harper, 424 F. App'x at 38-39 (finding that the plaintiff had failed to state a Monell claim where he did not state sufficient facts to allege the existence of a custom or practice).

Additionally, Traylor's Monell claim must be dismissed because, as explained in sections III.A.2 and III.A.3 below, Traylor fails to state a violation of his constitutional rights.

## 2. Count Four: Retaliation Practice, as to Keating

In Count Four, Traylor alleges that Keating retaliated against him on April 14, 2011 because Traylor had filed a CHRO complaint and civil case against the City of New London. Keating, and the court, interpret this count as a First Amendment retaliation claim.

"To prevail on this free speech claim, plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) [defendant's] actions were motivated or substantially caused by his exercise of that right; and (3) [defendant's] actions effectively chilled the exercise of his First Amendment right."

Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Traylor does not plead any facts that show that his exercise of his First Amendment rights was effectively chilled.  See Laird v. Tatum, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."); Davis v. Vill. Park II Realty Co., 578 F.2d 461, 464 (2d Cir. 1978) ("[The plaintiff] must prove that she was actually chilled in the exercise of her rights.").  Thus, Count Four is being dismissed.

> **3.** **Count Seven: Due Process, Equal Protection and Conspiracy, as to Connecticut College, City of New London and Keating**
>
> **a.** **42 U.S.C. § 1983 – Due Process, as to Connecticut College, New London and Keating**

In the Order re Dismissal, the court dismissed Traylor's Due Process claims against New London and Connecticut College in the original complaint.  (See Order re Dismissal at 4.)  To the extent that Traylor alleges Due Process claims against New London and Connecticut College in the Amended Complaint, they are substantially the same as the Due Process claims in the original complaint, and they are being dismissed.  (Compare

-13-

Complaint (Doc. No. 1) at 43-51, <u>with</u> Amended Complaint at 38-46.)

To the extent that Traylor asserts a claim pursuant to 42 U.S.C. § 1983 on the theory that Keating violated his procedural and substantive due process rights by failing to read him his <u>Miranda</u> rights when Keating stopped him,[6] this claim is also being dismissed.

The Supreme Court "established the <u>Miranda</u> exclusionary rule as a prophylactic measure to prevent violations of the right protected by the text of the Self-Incrimination Clause--the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." <u>Chavez v. Martinez</u>, 538 U.S. 760, 772 (2003).  "Rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." <u>Id.</u>  Thus, a police officer's failure to read <u>Miranda</u> warnings to an individual does not violate such individual's constitutional rights and "cannot be grounds for a § 1983 action." <u>Id.</u>  <u>See also Deshawn E. by Charlotte E. v. Safir</u>, 156 F.3d 340, 346 (2d Cir. 1998)

---

[6] Traylor advised the court during the January 8, 2013 status conference that his Section 1983 Due Process claim is based on Keating's failure to read him his <u>Miranda</u> rights.  (<u>See</u> Order re Dismissal at 4.)

("[P]laintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer <u>Miranda</u> warnings.").

### b. 42 U.S.C. § 1983 – Equal Protection, as to Connecticut College, City of New London and Keating

In Count Seven, Traylor asserts a claim pursuant to 42 U.S.C. § 1983 on the theory that Connecticut College, New London and Keating violated his rights under the Equal Protection Clause. (<u>See</u> Am. Compl. ¶ 128.)

#### i. City of New London

In the Order re Dismissal, the court dismissed Traylor's Equal Protection claims in the original complaint as to the City of New London. (Order re Dismissal at 5.) Because the Equal Protection claims in Count Seven of the Amended Complaint are substantially the same, they are being dismissed as to City of New London.

#### ii. Connecticut College

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 323 (2d Cir. 2002). "Where the defendant is a private entity, the plaintiff must show that there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." <u>Prowisor v. Bon-Ton, Inc.</u>, 232 F. App'x 26, 28

(2d Cir. 2007) (summ. order) (internal quotation marks and citations omitted).

Here, Traylor does not allege that Connecticut College is a state actor or a private party that acted under color of state law.  Rather, he alleges that Connecticut College had in place a policy permitting nude modeling on campus and its security guards questioned Traylor before Keating arrived.  To the extent that Traylor alleges that the security guards called the New London Police Department to have Traylor arrested, "courts in the Second Circuit have repeatedly held [that this] does not constitute state action absent special circumstances, i.e., guards sworn as 'special patrolman' or cooperative interactions of guards and police."  Prowisor v. Bon-Ton, Inc., 426 F. Supp. 2d 165, 170 (S.D.N.Y. 2006) aff'd, 232 F. App'x 26 (2d Cir. 2007) (collecting cases).

Thus, Traylor's Section 1983 Equal Protection claim is being dismissed as to Connecticut College.

### iii. Keating

There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause.  A plaintiff could point to a law or policy that "expressly classifies persons on the basis of race."  Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner.  A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

<u>Brown v. City of Oneonta, New York</u>, 221 F.3d 329, 337 (2d Cir. 2000) (internal citations omitted).  "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." <u>Id.</u>

Here, Traylor alleges that the Cummings Art Building was open to the public, he was in the building for a legitimate purpose, and Keating arrested him because of his race.  However, the Amended Complaint does not allege sufficient facts that could establish that Keating intentionally discriminated against Traylor on the basis of his race.  Rather, Traylor merely alleges that he is African-American, that Keating engaged in certain actions, and that he would not have engaged in these actions if Traylor were another race; that is not sufficient. "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion."  <u>Clyburn v. Shields</u>, 33 F. App'x 552, 555 (2d Cir. 2002) (citing <u>General Building Contractors Ass'n v. Pennsylvania</u>, 458 U.S. 375, 391 (1982)). "[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened <u>because</u> the person is a member of that racial group." <u>Williams v. Calderoni</u>, No. 11 Civ. 3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012) (dismissing

Section 1981 and federal housing discrimination claims).  "The naked assertion by [a] plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss." Yusuf v. Vassar College, 827 F. Supp. 952, 955–56 (S.D.N.Y. 1993), aff'd in part, rev'd in part on other grounds, 35 F.3d 709 (2d Cir. 1994) (dismissing Section 1981 claim).

Because Traylor has failed to provide factual allegations sufficient to raise a right to relief above the speculative level, his Section 1983 Equal Protection claim is being dismissed as to Keating.  See Chase Grp. Alliance LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010).

### c.   42 U.S.C. § 1985(3) – Conspiracy, as to Connecticut College, City of New London and Keating

In Count Seven, the plaintiff asserts a claim pursuant to 42 U.S.C. § 1985(3) on the theory that Connecticut College conspired with New London and Keating to violate Traylor's constitutional rights. (See Am. Compl. ¶ 129.1.)

42 U.S.C. § 1985 provides, in relevant part:

If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons

within such State or Territory the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Thus, to state a conspiracy claim under 42 U.S.C. § 1985(3):

a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . , (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in [her] person or property or deprived of any right or privilege of a citizen of the United States.

Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007) (citing Britt v. Garcia, 457 F.3d 264, 270 n. 4 (2d Cir. 2006)).

To allege the existence of a conspiracy to deprive a plaintiff of his constitutional rights:

[V]ague and conclusory allegations that defendants entered into an unlawful agreement . . . . do not suffice. See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (per curiam) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (internal quotation marks omitted)); see also Webb v. Goord, 340 F.3d 105, 110–11 (2d Cir. 2003) ("[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (internal quotation marks omitted)).

Kiryas Joel Alliance v. Vill. of Kiryas Joel, 495 F. App'x 183, 190 (2d Cir. 2012).

Here, Traylor alleges that Keating is a City of New London police officer who was previously employed as a security guard at Connecticut College; Keating knew Traylor's name before he detained Traylor at Connecticut College; and Connecticut College conspired with the City of New London and Keating to deprive Traylor of his constitutional due process and equal protection rights because of his race and color. Specifically, because of Traylor's race and color, Keating arrested him at Connecticut College, and the other defendants failed to protect him from unlawful prosecution.

However, Traylor fails to allege a sufficient factual basis for a meeting of the minds between any of Connecticut College, Keating and the City of New London to achieve an unlawful end. He makes only vague and general allegations of conspiracy. Thus, Traylor's Section 1985(3) conspiracy claim is being dismissed.[7]

This claim is also being dismissed because, as explained in sections III.A.2, III.A.3.a and III.A.3.b above, Traylor fails to state a violation of his constitutional rights.

---

[7] To the extent that Traylor also makes a Section 1983 conspiracy claim, this claim is being dismissed for failure to allege sufficient factual basis for a conspiracy. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) ("In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [the plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.").

### B.   State Law Claims

State law claims are pending against the defendants in Count One; Count Three; Count Five; Count Six; Count Seven -- claims pursuant to the Connecticut Constitution; Count Eight; and Count Nine.[8]

> **1.   Count One: Defamation of Character as to Hammond, Smith, Newman, Nakamara, Connecticut College, City of New London and Keating**

"To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 217 (2004). Under Connecticut law, a defamatory statement is "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Levesque v. Town of Vernon, 341 F. Supp. 2d 126, 140 (D. Conn. 2004). "Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." Skakel v. Grace, No. 3:12-CV-01669 VLB, 2014 WL 902675 (D. Conn. Mar. 7, 2014). "[A] complaint for defamation must, on its face, specifically

---

[8] Pursuant to the Order re Dismissal, all claims based on federal law in Count Three are incorporated into Count Seven. (See Order re Dismissal at 3.)

identify what allegedly defamatory statements were made, by
whom, and to whom." Chertkova v. Connecticut Gen. Life Ins. Co.,
No. CV980486346S, 2002 WL 1902988, at *4 (Conn. Super. Ct. July
12, 2002) aff'd sub nom. Chertkova v. Connecticut Gen. Life Ins.
Co., 76 Conn. App. 907, 822 A.2d 372 (2003); see also Buguruka
Orphans & Cmty. Econ. Dev., Inc. v. Cote, No. TTDCV075001261S,
2007 WL 2200675, at *3 (Conn. Super. Ct. July 10, 2007); Ramirez
v. Costco Wholesale Corp., No. CV116020832, 2012 WL 1959059, at
*5 (Conn. Super. Ct. May 2, 2012).

Here, each of the defendants argue that Count One should be
dismissed because Traylor does not allege which defendant made
defamatory statements about him, or to whom.  The court
disagrees.

Traylor alleges in Count One that the "above Defendants"
falsely stated that "[he] willfully and intentionally went to
the third level of the Cummings Art Building knowing that he was
not welcome", falsely stated the "[he] had hidden motives and/or
. . . he was lying about his reasons for going to the third
level of the Cummings Art Building . . ." and "falsely accused
[him] of [t]resspassing . . . ."  (Am. Compl. ¶¶ 37.1, 37.2,
37.3.)  These allegations lack specificity as to the speaker and
the third person to whom the statement was published.

However, Traylor provides some additional information
relevant to these allegations at other points in the Amended

Complaint.  After Traylor initially began to leave campus, he
returned and approached a campus security officer who had been
looking at him.  (Am. Compl. ¶ 55.)  When that officer asked
Traylor if he had been in the Cummings Art Building, Traylor
confirmed that he had, explained that he had asked Nakamara to
do some courtroom sketches for him, and suggested that the
campus security officer "go and check out his statement with the
artist . . . . The campus officer concurred with Mr. Traylor's
suggestion and departed towards the Cummings Art Building."
(Am. Compl. ¶ 57.)  In Count Three, Traylor alleges that when he
explained that the reason he was in the Cummings Art Building
was to find an artist to render court room scenes, "this was
corroborated by the artist and nude model. Mr. Traylor's
intentions were confirmed by the Defendant's statements to the
police. . . . [T]he Defendant[]s contacted Campus Security and
implied that he was lying about his true intentions in seeking a
court room sketch artist." (Am. Compl. ¶ 88.)  Traylor also
alleges that the police report of the incident states that
"[t]he Male Student stated the accused told him he was looking
for a sketch artist.  When he asked why, the male student also
felt as though the accused was lying and making up an excuse,
for the same reasons as the female student. The accused told the
male student that he was involved in a law suit and needed a

-23-

sketch artist to draw the court room and the judge." (Am.
Compl. ¶ 91.)

Applying the less stringent standards used to consider the
sufficiency of the allegations in a pro se complaint, the court
concludes that the plaintiff has sufficiently identified
defendants Nakamara and Newman as the speakers of the alleged
defamatory remarks. Because the plaintiff does not allege that
Hammond, Smith, Connecticut College, City of New London or
Keating made any defamatory remarks about him, Count One is
being dismissed as to these defendants.

To the extent that the allegedly defamatory statements made
to Keating are sufficiently particular, the statements cannot
provide the basis for a claim of defamation because they are
entitled to protection by a privilege. "[Statements made to the
police in connection with a criminal investigation] are subject
to a qualified privilege." Gallo v. Barile, 284 Conn. 459, 468
(2007). "A qualified privilege protects false statements that
are not made maliciously. . . . the malice required to overcome
a qualified privilege in defamation cases is malice in fact or
actual malice. Actual malice requires that the statement, when
made, be made with actual knowledge that it was false or with
reckless disregard of whether it was false . . . . A negligent
misstatement of fact will not suffice; the evidence must
demonstrate a purposeful avoidance of the truth. . . . Malice in

-24-

fact is sufficiently shown by proof that the [statement was] made with improper and unjustifiable motives." Id., at 464, n.6 (internal citations and quotation marks omitted).  Here, Keating spoke to Nakamara and Newman while investigating Traylor and ultimately issued Traylor a ticket for simple trespass.  (See Am. Compl., Ex. C (Doc. No. 39-1 at 12).)  Traylor has failed to allege facts that could support a conclusion that Nakamara and Newman made any false statements with actual knowledge or reckless disregard.

As to the statements Newman and Nakamara made to the campus security officers, Traylor fails to state a claim because he does not identify the campus security officers in his Amended Complaint.  Furthermore, any such statements are absolutely privileged because Traylor consented to them by directing the unnamed campus security officers to ask Nakamara and Newman why Traylor was in the Cummings Art Building.  See Miron v. Univ. of New Haven Police Dep't, 284 Conn. 35, 45 (2007) ("In defining the contours of defamation claims in this state, we consistently have looked to the Restatement (Second).");  Restatement (Second) of Torts § 583 (1977) ("[T]he consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation.");  see also Restatement (Second) of Torts § 583, Illustration 2 (1977) ("A, a school teacher, is summarily discharged by the school board. He demands

-25-

that the reason for his dismissal be made public. B, president of the board, publishes the reason. A has consented to the publication <u>though it turns out to be defamatory</u>.") (emphasis added).

  2.  **Count Three: Discriminatory Practice in Violation of the Constitution and Statutes of Connecticut as to Newman, Nakamara, Connecticut College, City of New London and Keating**

Traylor brings a claim for "discriminatory practice" pursuant to the Alvin W. Penn Racial Profiling Prohibition Act, Conn. Gen. Stat. §§ 54-1l, 54-1m ("Penn Act"), arguing that defendants Newman, Nakamara, Connecticut College, City of New London and Keating racially profiled and discriminated against him because of his race and color.  (<u>See</u> Am. Compl. ¶ 93.8.) The Penn Act prohibits law enforcement officers from engaging in racial profiling, requires police departments to develop policies regarding racial profiling, and imposes reporting requirements on municipalities with regard to racial profiling complaints.  <u>See</u> Conn. Gen. Stat. §§ 54-1l, 54-1m.  However, the plain language of the Penn Act does not provide a private right of action to enforce its requirements and the court finds no authority to the contrary.  <u>See</u> <u>Marshall v. Town of Middlefield</u>, No. 3:10-cv-1009, 2012 WL 601783, *6 n.3 (D. Conn. Feb. 23, 2012) ("The court finds no authority to suggest that the [Penn Act] provides a private right of action to enforce its

requirements.").  Therefore, Count Three of the Amended Complaint is being dismissed as to all defendants.

### 3.   Count Five: Negligence as to Hammond, Smith, Newman, Nakamara, Connecticut College and City of New London

In Count Five, Traylor alleges that Newman and Nakamara negligently left the door to the student art space open while Newman posed nude for Nakamara.  (See Am. Compl. ¶ 101.) Traylor also alleges that unspecified defendants negligently "failed to make any provision for preventing public indecency in a public access building", "failed to follow protective measures [to protect Traylor] . . . from being exposed to public indecency", and failed to enforce Connecticut's public indecency statute. (Am. Compl. ¶ 102; Am. Compl. ¶ 104(a).)  Traylor alleges that as a result of these alleged acts of negligence ~~he~~ "was required to spend various sums of money for expenses" and he suffered "great emotional distress." (Am. Compl. 113.)

The defendants argue that this count should be dismissed because, among other things, Traylor failed to allege an injury. Traylor does not allege any physical injury as a result of the acts by the defendants.  However, he does allege an emotional injury, and further alleges in Count Six that the actions that are the basis of this Count, along with other actions, "have caused him severe emotional distress, sleeplessness, depression, great mental pain and anguish, including ongoing pervasive

memories and flashbacks . . . for which he has received and will continue to receive professional counseling."[9]  (Am. Compl. 118.) Thus, the court construes Count Five as an attempt to state a negligent infliction of emotional distress claim.

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm . . . [which] essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants."  Carrol v. Allstate Ins. Co., 262 Conn. 433, 446-47 (2003).

The Amended Complaint does not state a claim for negligent infliction of emotional distress.  As to Nakamara and Newman's alleged failure to close the studio door, and any other defendant's alleged failure to warn members of the public that models were posing nude for art students in the Cummings Art Building, neither the acts or omissions alleged involve an unreasonable risk of causing emotional distress that might result in illness or bodily harm.  Also, the emotional distress that Traylor claims did not flow from being exposed to the nude

_____

[9] Although the Amended Complaint does not incorporate this allegation into Count Five, the court considers it here because the court applies less stringent standards to consider the sufficiency of the allegations in a pro se complaint.

-28-

model, but events that occurred after he left the Cummings Art Building.  Therefore, Count Five is being dismissed with respect to these claims.

As to Traylor's allegation that unspecified defendants negligently failed to enforce Connecticut's public indecency statute, the court construes this as a negligent infliction of emotional distress claim against the City of New London.

New London contends that municipal immunity bars this claim against it. "[T]he general rule developed in [Connecticut] case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." Williams v. City of New Haven, 243 Conn. 763, 766-67, (1998). The Connecticut legislature has enacted a statute that provides, in relevant part, that except as otherwise provided by law, municipalities are generally liable for "[t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties," but not for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n(a)(1).  Therefore, municipalities are liable for negligent performance (or non-performance) of ministerial acts, i.e. "acts to be performed in a prescribed manner without the exercise of

judgment or discretion." <u>Violano v. Fernandez</u>, 280 Conn. 310, 319 (2006) (defining ministerial acts in the context of immunity of municipal employees).

The Amended Complaint does not allege facts that could establish any duty to perform a ministerial act on the part of any employee, officer, or agent of New London. Therefore, the plaintiff has not stated a negligent infliction of emotional distress claim against New London upon which relief may be granted, and Count Five is being dismissed with respect to New London.

> **4.   Count Six: Negligent Infliction of Emotional Distress as to Hammond, Smith, Newman, Nakamara, Connecticut College, City of New London and Keating**

In Count Six, Traylor alleges that as a result of the negligence of all the defendants, he suffered emotional distress.[10]   To the extent that Traylor repeats his allegation that the acts set forth in Count Five caused him emotional distress, this claim is being dismissed. (<u>See</u> Section III.B.3.)

However, Traylor also alleges in Count Six that he suffered emotional distress because Keating negligently stopped, searched and arrested him, in that even though Traylor followed Keating's

---

[10] In the original Complaint, Traylor brought a claim for reckless infliction of emotional distress.  The court dismissed this claim and granted Traylor leave to file an amended complaint, "in which he may at his option include a claim for intentional infliction of emotional distress, a claim for negligent infliction of emotional distress, or both."  (Order re Dismissal of Certain Claims and Scheduling (Doc. No. 28) at 4.)  Traylor elected to bring a claim for negligent infliction of emotional distress.  (<u>See</u> Am. Compl. ¶ 116.)

direction to get back into his car, Keating "rushed up on him . . . from the back side in a violent manner . . . began to frisk him in the most demoralizing and violent manner", put his hands on Traylor's "private parts (front and rear)", addressed Traylor by his first name, asked Traylor if he had any weapons, handcuffed him, and forced Traylor to sit on the curb behind Keating's car, where people from the general public saw him. (Am. Compl. ¶¶ 119.1 – 119.3.)  Traylor alleges that these acts were an "attempt to humiliate and embarrass" him.  (Am. Compl. ¶ 120.)

Keating contends that this Count should be dismissed because he has qualified immunity in the performance of a governmental duty that involves the exercise of discretion.  A municipal employee also "has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act."  Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131, 1133-34 (1989).  The Connecticut Supreme Court has identified certain exceptions to discretionary act immunity, including "when the alleged conduct involves malice, wantonness or intent to injure . . . ." Doe v. Petersen, 279 Conn. 607, 615-16, (2006) (internal citations and quotation marks omitted).  Because the "malice, wantonness or intent to injure" exception requires that the relevant individual act with intent, it is not available in

negligent infliction of emotional distress claims.  See, e.g.,
Venghaus v. City of Hartford, No. 3:06CV01452 DJS, 2012 WL
1050014, at *15 (D. Conn. Mar. 27, 2012).

Therefore, Count Six is being dismissed.

### 5.    Count Seven: Connecticut Constitution as to Connecticut College, Keating and New London

In Count Seven, Traylor purports to allege due process and
equal protection claims under the Connecticut Constitution, Art
I, §§ 1, 20 against the City of New London and Keating.  (Am.
Compl. ¶ 127.)

Traylor's claims against Connecticut College pursuant to
the Connecticut Constitution are being dismissed because
Connecticut College is not a state actor.  "To state a claim
under . . . the Connecticut Constitution, a plaintiff must
allege that he was injured by either a state actor or a private
party acting under color of state law." Eaddy v. Jemiola, No.
3:11-CV-1081 MPS, 2013 WL 441077, at *3 (D. Conn. Feb. 5, 2013)
(citing Cologne v. Westfarms Assocs., 192 Conn. 48, 61–62
(1984)).

The New London Defendants argue that Traylor's claims based
on the Connecticut Constitution should be dismissed because
there is no private cause of action for damages under the due
process and equal protection provisions of the Connecticut
Constitution.  (New London and Keating Memorandum of Law at 27.)

In Binette v. Sabo, 244 Conn. 23 (1998), the Connecticut Supreme Court authorized a damages action for violations of Article First, §§ 7 and 9 of the Connecticut Constitution, dealing with illegal searches and seizures. See Binette, 244 Conn. at 47. However, the court cautioned that "we emphasize that our decision to recognize a Bivens-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution. . . . Whether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis." Binette v. Sabo, 244 Conn. 23, 47-48 (1998).

This court has declined to exercise supplemental jurisdiction over claims seeking monetary damages for violations of the due process and equal protection provisions of the Connecticut Constitution, Silvera v. Connecticut Dep't of Corr., 726 F. Supp. 2d 183, 200 (D. Conn. 2010), and has also dismissed such causes of action because "there is no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, § § 1, 8 and 20) of the Connecticut Constitution." Ward v. Housatonic Area Reg'l Transit Dist., 154 F. Supp. 2d 339, 356 (D. Conn. 2001).

Given that Traylor raises "novel and undeveloped issues of state law, and out of the deference owed to the State as the

final arbiter of its own Constitution," the court, in its discretion, declines to exercise supplemental jurisdiction over the claims against Keating and New London under the Connecticut Constitution.  Silvera, 726 F. Supp. 2d at 199-200.  Therefore, this claim against Keating and New London is being remanded to the Connecticut Superior Court.

### 6.   Count Eight: Spoliation and Destruction of Evidence as to Keating

Count Eight alleges that Keating and the City of New London intentionally spoliated evidence.  Specifically, Traylor alleges that Keating and the City of New London destroyed the piece of paper on which Nakamara wrote Traylor's name and phone number and that Keating and the City of New London destroyed the recordings made by Keating and the other officer's microphones and dash-cameras.  "[T]he tort of intentional spoliation of evidence consists of the following essential elements: (1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." Rizzuto v. Davidson Ladders, Inc., 280 Conn. 225, 244-45 (2006).  "The destroyed evidence must be vital to the plaintiff's ability to prevail on his claims."  Caro v.

Weintraub, No. 3:09-CV-1353, 2010 WL 4514273, *6 (D. Conn. Nov. 2, 2010) (citing Rizzuto, 280 Conn. at 230-232).

Here, Traylor has not alleged that such evidence is vital to his ability to prevail on his claims. The Amended Complaint does not identify which claims this evidence is relevant to and it does not allege that the evidence was vital. The Amended Complaint instead states that the alleged destruction of evidence has "deprived him of the ability to examine the evidence to the facts of this case." (Compl. ¶ 152).

Even if the court construes the Amended Complaint as alleging that the piece of paper is evidence that corroborates his story of why he was on the third level of the Cummings Art Building and that the recordings show his alleged mistreatment by the police officers, that does not suffice to make the evidence vital to any claim. Traylor has personal knowledge of his interactions with Newman and Nakamara, and thus he would be able to testify as to his reasons for being on the third level. Similarly, Traylor has personal knowledge of the interactions and conversations that would be depicted in the recordings. Because Traylor's own testimony is an alternate source of the allegedly spoliated evidence, the piece of paper and the recordings are not vital and the absence of the evidence would not itself preclude him from establishing a prima facie case. See Caro, 2010 WL 4514273 at *7 (holding that the plaintiff

failed to adequately allege that a destroyed recording was vital because he had personal knowledge of the conversation on the recording, and therefore he had other means of establishing a prima facie case).

Traylor has failed to allege all of the elements of the tort of intentional spoliation of evidence.  Therefore, Count Eight is being dismissed.

### 7.   Count Nine: Declaratory and Injunctive Relief as to Connecticut College

In Count Nine, Traylor alleges that Connecticut College is in violation of Connecticut's public indecency statute and seeks an injunction directing it to post certain warning signs.  (Am. Compl. ¶ 160.)

> The public indecency statute provides:
>
> A person is guilty of public indecency when he performs any of the following acts in a public place: . . . a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person. . . . For the purposes of this section, "public place" means any place where the conduct may reasonably be expected to be viewed by others.

Conn. Gen. Stat. § 53a-186.  The statute does not define "lewd" or "lewd exposure" and Connecticut courts have not defined these terms in the context of 53a-186.  Black's Law Dictionary defines lewd as: "[o]bscene or indecent; tending to moral impurity or wantonness."  Black's Law Dictionary (10th ed. 2014).

Here, Traylor has pled no facts to suggest that any lewd exposure occurred in the Cummings Art Building.  He merely alleges that an art student sketched a nude model in an art studio and that the door to the studio was left partially open. Such behavior is neither obscene nor indecent, and does not tend towards moral impurity or wantonness.  Therefore, Count Nine is being dismissed.

## IV.  Leave to Amend the Complaint

> Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim.  A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. However, leave to amend a complaint may be denied when amendment would be futile.

Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (internal citations and quotation marks omitted).

Here, the court has already permitted the plaintiff leave to amend his Complaint (see Doc. No. 28), and based on the court's review of the facts pled in the Amended Complaint, there is no indication that the plaintiff can state a valid claim as to those claims that are being dismissed herein.  The court therefore concludes that it would be futile to grant the plaintiff leave to amend his complaint for a second time, and the claims being dismissed herein are dismissed with prejudice.

## V.    Exercise of Supplemental Jurisdiction

Having dismissed the plaintiff's federal law claims, the court declines to exercise supplemental jurisdiction over his remaining state-law claims.  Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."

Considering the factors set forth in United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966), the court concludes that judicial economy, convenience and fairness point toward declining jurisdiction over the claim against Keating and New London in Count Seven, which is Traylor's sole remaining claim. All of the federal claims in the Amended Complaint have been dismissed, and discovery in this case has been stayed pending a ruling on the motions to dismiss.  When federal claims are dismissed before trial, the basis for retaining jurisdiction is weak. See Gibbs, 383 U.S. at 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir.2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine–judicial economy, convenience, fairness, and comity—
will point toward declining to exercise jurisdiction over the
remaining state—law claims.") (quoting Carnegie–Mellon Univ. v.
Cohill, 484 U.S. 343, 350 n. 7 (1988)).  Furthermore, because
Count Seven involves novel and undeveloped issues of state law
involving the Connecticut Constitution, comity weighs in favor
of declining supplemental jurisdiction.

Because this case was initially filed in state court and
then removed to federal court, it is appropriate to remand the
remaining state law claims, rather than to dismiss the action.
See Valencia v. Lee, 316 F.3d 299, 308 (2d Cir.2003) ("Because
this case was commenced in state court, the district court
should remand the action to the state court in which it was
originally filed.") (citing Carnegie–Mellon Univ. v. Cohill, 484
U.S. 343).

## VI.  Conclusion

Accordingly, for the reasons set forth above, the
Defendants' Motions to Dismiss (Doc. Nos. 92, 94, 108) are
hereby GRANTED in part.  Counts One, Two, Three, Four, Five,
Six, Eight and Nine are dismissed and Count Seven is dismissed
as to Connecticut College.  The Clerk shall terminate Ulysses B.
Hammond, Steward Smith, Connecticut College, Laura Newman and
Jeremy Nakamara as defendants.

The remaining state law claim in Count Seven under the Connecticut Constitution against defendants Lawrence M. Keating and the City of New London is REMANDED to Connecticut Superior Court, Judicial District of New London.

The Clerk shall close this case.

It is so ordered.

Dated this 18th day of March 2015, at Hartford, Connecticut.

                                                     /s/
                                                  Alvin W. Thompson
                                      United States District Judge